Judge McMahon

12 CV 8791

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                    PLAINTIFF,

      v.

ERIC MONCADA,
BES CAPITAL LLC, and
SERDIKA LLC,

             DEFENDANTS.

CIVIL ACTION NO.

Complaint for Injunctive and Other
Equitable Relief and Civil Monetary
Penalties Under the Commodities
Exchange Act

Civil Case No. 12-cv-8791 (CM)
ECF Case

*RECEIVED DEC 04 2012 S.D.N.Y. [CASHIERS]*

## I.  INTRODUCTION

1.      As more fully alleged below, BES Capital LLC ("BES") and Serdika LLC

("Serdika"), by and through their officers, employees and agents, including but not limited to, Eric

Moncada ("Moncada"), and Moncada directly (collectively "Defendants"), attempted to manipulate

the price of the December 2009 #2 Soft Red Winter Wheat commodity futures ("futures") contract

traded on the Chicago Board of Trade ("CBOT") (hereinafter "December 2009 Wheat Futures

Contract") on the trading days of October 6, 12, 14, 19, 26, 27, 29, and 30, 2009 ("relevant dates").

These acts and practices constitute violations of the Commodity Exchange Act, as amended ("Act"

or "CEA"), 7 U.S.C. §§ 1 *et seq.* (2006) and the U.S. Commodity Futures Trading Commission's

("Commission" or "CFTC") Regulations ("Regulations").

2.      On the relevant dates, Moncada, while trading accounts of BES and/or Serdika,

employed a strategy utilizing multiple trading tactics in the #2 Soft Red Winter Wheat futures

market on the electronic trading platform, Globex, with the intent to affect the price of the December 2009 Wheat Futures Contract.

3.        Moncada's manipulative scheme was comprised of the following trading tactics: 1) manually placing and immediately canceling numerous orders for 200 lots or more (hereinafter "large-lot orders") without the intent to have the large-lot orders filled, but instead with the intent to create the misleading impression of increasing liquidity in the market;  2) placing these large-lot orders at or near the best bid or offer price in a manner to avoid being filled by the market; and 3) placing small-lot orders on the opposite side of the market from these large-lot orders with the intent of taking advantage of any price movements that might result from the misleading impression of increasing liquidity that his large-lot orders created.  Moncada repeated these trading tactics consistently during the relevant dates, in one form or another.  These trading tactics show Moncada's intent to repeatedly affect the prices of the December 2009 Wheat Futures Contract both upward and downward.

4.        Defendants' conduct violates Section 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b and 13(a)(2) (2006), which make it unlawful for any person to attempt to manipulate the market of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

5.        Additionally, BES and Serdika, by and through their officers, employees and agents, including but not limited to, Moncada, and Moncada  individually, engaged in several fictitious sales of the December 2009 Wheat Futures Contract between BES and Serdika on October 6, 12, 15, and 29, 2009.

6.        Moncada traded in accounts in the name of BES and in the name of Serdika.  On October 6, 12, 15, and 29, 2009, Moncada placed virtually simultaneous orders to buy in the BES

account and orders to sell in the Serdika account, or, conversely, placed virtually simultaneously

orders to buy in the Serdika account and orders to sell in the BES account.  By simultaneously

buying and selling the same number of lots of the December 2009 Wheat Futures Contract for the

same delivery month at the same price on October 6, 12, 15, and 29, 2009, Moncada intended for

the trades to offset each other.

7.      Defendants' transactions were fictitious sales, and therefore violated Section 4c(a)

of the Act, 7 U.S.C. § 6c(a) (2006).  Defendants' transactions were also non-competitive and

therefore violated Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2012).

8.      Moncada committed the acts described herein within the course and scope of his

employment at, or agency with, BES and Serdika.  Therefore, BES and Serdika are each liable

under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. §

1.2 (2012), as a principal for its agents' acts, omissions or failures.

9.      Plaintiff Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C.

§ 13a-1 (2006), to enjoin Defendants' violative acts and practices and to compel Defendants'

compliance with the Act and Regulations.  In addition, the CFTC seeks civil monetary penalties and

such other equitable relief as this Court deems necessary or appropriate.

## II.   JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7

U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any

person, or to enforce compliance with the Act, whenever it shall appear to the Commission that

such person has engaged, is engaging, or is about to engage in any act or practice constituting a

violation of any provision of the Act or any rule, regulation, or order thereunder.

11.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2006), in that Defendants are found in this District, transact business in this District, and

the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

### III.  THE PARTIES

12.     The **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq*., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq*. (2012).  One of its core responsibilities is to protect the public interest by deterring and preventing price manipulations of the commodity markets or futures markets, or other disruptions to market integrity.  *See* 7 U.S.C. § 5(b) (2006).

13.     **BES Capital LLC** was a Delaware limited liability company with its principal place of business in New York, New York.  BES shared offices, common ownership and management with Serdika.  BES began operations in December 2008, and ceased trading in December 2009.  BES has never been registered with the Commission.

14.     **Serdika LLC** was a Delaware limited liability company with a principal place of business in New York, New York.  Serdika shared offices, common ownership and management with BES.  Serdika began operations in November 2007, and ceased trading in June 2011.  Serdika has never been registered with the Commission.

15.     **Eric Moncada** resides in New York, New York and was a futures trader employed by Serdika and a member of BES during the relevant dates.  Moncada was responsible for trades on behalf of BES and Serdika during the relevant dates.  Moncada is a floor broker registered with the Commission.  Moncada is currently a futures trader for an entity located in New York.

## IV.   FACTS

### A.   Background

#### i.   Definitions

16.    A futures contract is an agreement to purchase or sell a commodity for delivery or cash settlement in the future at a price determined at initiation of the contract that obligates each party to the contract to fulfill the contract at the specified price. Futures contracts are used to assume or shift price risk, and may be satisfied by cash settlement, delivery, or offset. Futures contracts are commonly used to hedge risks or to speculate on the price of commodities.

17.    Open interest represents the total number of futures contracts in a market that remain "open" at the end of a trading session across all available contract months. In other words, open interest refers to those contracts not yet liquidated either by an offsetting futures market transaction or delivery. For each open contract there is a "short" and a "long" position. For example, if open interest is one hundred contracts, then there are outstanding one hundred short contracts and one hundred long contracts.

18.    Volume is the number of purchases or sales of futures contracts made during a specified period of time.

#### ii.   CBOT #2 Soft Red Winter Wheat Futures Market Fundamentals

19.    The CBOT #2 Soft Red Winter Wheat Futures contract is regularly traded in five contract months (March, May, July, September, and December). One delivery contract is equal to 5,000 bushels of CBOT #2 Soft Red Winter Wheat. The CBOT #2 Soft Red Winter Wheat Futures contract carried an average open interest of approximately 183,000 contracts per day on the relevant dates, with an average trading volume of approximately 50,000 contracts per day.

20.    Prices of the CBOT #2 Soft Red Winter Wheat Futures contract are quoted in cents per bushel. During the relevant time period, the CBOT #2 Soft Red Winter Wheat Futures contract

traded between approximately 450 and 500 cents per bushel, which equates to a price of $22,500 to $25,000 per contract.

21.    Prices of the CBOT #2 Soft Red Winter Wheat Futures contract move in increments of one quarter cent per bushel, known as a "tick." The movement in price of one "tick" results in a change in the value of the contract by $12.50.

22.    During the relevant dates, the trading day began on the electronic trading platform, Globex at 6:00 p.m. and continued to 7:15 a.m. the next day. Trading closed from 7:15 a.m. until 9:30 a.m. Trading reopened at 9:30 a.m. on both Globex and open outcry in the pit and closed at 1:15 p.m. All times are Central time.

23.    A long position in the CBOT #2 Soft Red Winter Wheat Futures contract is a *purchase* not yet closed with an offsetting sale or delivery. Accordingly, the holder of a long position is obligated to offset prior to the delivery period during the contract month, or to accept physical delivery of wheat. The holder of a long position profits from a rise in the price of the futures contract.

24.    A short position in CBOT #2 Soft Red Winter Wheat Futures contract is a *sale* not yet closed with an offsetting purchase or delivery. Accordingly, the holder of a short position is obligated to offset prior to the delivery period, or else physically deliver wheat to the holder of a long position. The holder of a short position profits from a fall in the price of the contract.

25.    The vast majority of trading in the CBOT #2 Soft Red Winter Wheat Futures contract market is conducted electronically via Globex. In electronic trading, traders have the ability to enter, modify and cancel bids and offers in a matter of milliseconds through a computer portal to the Globex platform.

26.     When a "buy" or "sell" order is placed on Globex, the order becomes part of the order book. Globex displays to market participants the total order volume of the ten best prices closest to the last executed trade price on both the buy side and the sell side, commonly known as "best of book." For the CBOT #2 Soft Red Winter Wheat Futures contract, Globex functions such that the best available bid or offer price must be taken, "hit" or "lifted", by the market for a trade to occur before the next available best bid or offer price can be taken. The best bid price is the highest available price for buy orders that are posted in the market. The best offer price is the lowest available price for sell orders that are posted in the market.

27.     Globex displays the number of individual orders at each price point in the best of book and the total order volume. For example, if Globex showed bids of 500 lots at 450 cents in the best of book, a market participant would know if there were 500 orders at one lot apiece or a single order for 500 lots.

**B.     Moncada's Manipulative Scheme**

28.     On the trading days of October 6, 12, 14, 19, 26, 27, 29, and 30, 2009, Moncada engaged in a strategy of repeated and persistent trading activity in an attempt to manipulate the price of the December 2009 Wheat Futures Contract. Moncada's manipulative scheme employed the following trading tactics: 1) manually placing and immediately canceling numerous large-lot orders without the intent to have the large-lot orders filled, but instead with the intent to create the misleading impression of increasing liquidity in the market; 2) placing these large-lot orders at or near the best bid or offer price in a manner to avoid being filled by the market; and 3) placing small-lot orders on the opposite side of the market from these large-lot orders with the intent of taking advantage of any price movements that might result from the misleading impression of increasing liquidity that his large-lot orders created. These trading tactics illustrate Moncada's

intent to repeatedly affect the prices of the December 2009 Wheat Futures Contract both upward and downward.

29.     Moncada used the first trading tactic by placing and immediately canceling orders in excess of 200 lots to buy December 2009 Wheat Futures Contracts (hereinafter "large-lot buy order") and by placing and immediately canceling orders in excess of 200 lots to sell December 2009 Wheat Futures Contracts (hereinafter "large-lot sell order").

30.     Moncada used the second trading tactic by placing many of his large-lot buy orders or large-lot sell orders at or near the market's best bid price or best offer price, respectively. By doing so, Moncada ensured that his large-lot orders (buy or sell) would appear in the "best of book" orders that Globex displayed to other market participants. However, Moncada entered his large-lot orders in a manner that minimized the risk that his large-lot orders would be hit or lifted by other market participants.

31.     Moncada used the first and second trading tactics with the intent to create the misleading impression of increasing liquidity in the market to other market participants.

32.     Moncada also used the third trading tactic of placing small-lot orders on the opposite side of the market from these large-lot (buy or sell) orders (hereinafter "potentially benefitting orders") to capture any financial benefit that may have resulted from any price movements in the market from the misleading impression of increasing liquidity created by the use of his first and second trading tactics. Moncada would place his potentially benefitting orders into the market immediately *before* or immediately *after* he placed his large-lot orders.

33.     Moncada's manipulative scheme was intended to capture immediate gains over a short period of time, and was distinct from his other trading activity throughout the day.

34.     On the relevant dates, Moncada manually entered a total of 710 large-lot orders. Moncada manually canceled at least 98 percent of the total volume of these orders.

35.     Over the relevant dates, Moncada's large-lot orders were manually canceled on average within approximately 2.06 seconds of entry, and as quickly as 0.226 seconds. This short time between entry and cancelation of the large-lot orders and the use of the other trading tactics in his manipulative scheme evidences that Moncada did not intend to fill these large-lot orders and did not have a rational economic business purpose for placing them other than to attempt to influence prices of the December 2009 Wheat Futures Contract.

36.     Moncada placed significantly more large-lot orders in the December 2009 Wheat Futures Contract than all other market participants combined on the relevant dates. Further, Moncada canceled a significantly higher percentage of his large-lot orders by volume in the December 2009 Wheat Futures Contract than all other market participants combined on the relevant dates.

**i.     Moncada's Use of His Manipulative Trading Strategy**

37.     The following examples illustrate Moncada's manipulative trading strategy of repeating and persistently using his trading tactics in his attempt to manipulate the December 2009 Wheat Futures Contract price. Moncada repeated, in one form or another, each of his trading tactics on each and every one of the relevant dates.

**a.     *Example of Activity Intended to Push the Market Price Up***

38.     On October 29, 2009, between 10:33:19 a.m. and 10:39:31 a.m., Moncada engaged in a pattern of manual trading activity in an attempt to manipulate upward the price of the December 2009 Wheat Futures Contract while trading in the Serdika account.

9

39.     As described more fully below, Moncada bought 25 lots of the December 2009 Wheat Futures Contract at prices of 506.5 and 506.75, in order to build a long position. Moncada then used all three of his trading tactics in an attempt to gain a financial benefit. First, he placed large-lot orders and then immediately cancelled them. Second, when he placed the large-lot orders, he did so at the best bid price when there were already several orders at that best bid price. By placing and then cancelling large lot orders at the best bid price, Moncada's large-lot orders had little chance of being filled. In doing so, Moncada intended to create the misleading impression of increasing liquidity (on the buy side) in the market with the intent to move the market price upward. During this period, the market price rose as high as 508.75. Moncada also used his third trading tactic of placing potentially benefiting sell orders (small lot short positions) to offset his previous long position at the higher prices that may have resulted from these trading tactics.

40.     Specifically, between 10:33:19 a.m. and 10:33:21 a.m., Moncada accumulated 25 lots of a long position at prices of 506.5 and 506.75 (*i.e.* bought low). Sometime after 10:38:25 a.m. Moncada offset these long positions at prices of up to 508.75 (*i.e.* sold high).

41.     As detailed in the chart below, Moncada, after 10:33:21 a.m., entered a series of six large-lot buy orders, of 402 lots and 500 lots, over a period of five minutes. Moncada canceled these six large-lot orders within 0.575 to 2.696 seconds of entry (Trading Tactic 1).

| Order Time | Lot Size | Price | Distance From Best Bid (Ticks) | Filled Lots | Time to Cancel |
|---|---|---|---|---|---|
| 10:33:25.251 a.m. | 500 | 506.5 | 0 | 0 | 1.283 seconds |
| 10:34:40.764 a.m. | 402 | 506.5 | 0 | 0 | 0.983 seconds |
| 10:35:41.260 a.m. | 402 | 506.75 | 0 | 0 | 0.575 seconds |
| 10:36:42.715 a.m. | 500 | 507.75 | 0 | 4 | 2.696 seconds |
| 10:37:40.395 a.m. | 500 | 508.5 | 0 | 1 | 0.746 seconds |
| 10:38:24.755 a.m. | 402 | 508.5 | 0 | 1 | 0.737 seconds |

42.     Of the 2,706 lots comprising these six large-lot buy orders, only six lots were filled, with the remaining 2,700 lots canceled. These large-lot buy orders were entered in a manner consistently at the best bid price, when there were already several orders ahead of Moncada's at the best bid price (Trading Tactic 2). This allowed Moncada's large-lot orders to appear in the best of book on Globex, while minimizing the risk that the large-lot orders would be filled. The prices of the large-lot buy orders that Moncada placed rose with the market price; the first large-lot buy order was at 506.5, the last at 508.5.

43.     Beginning one second after canceling his first large-lot buy order and continuing one minute after canceling his sixth large-lot buy order, Moncada entered a series of potentially benefiting sell orders at prices ranging from 507 to 508.75 (Trading Tactic 3). Moncada entered these potentially benefitting orders with the intent to take advantage of any possible market price movement resulting from the misleading impression of increasing liquidity on the buy side his large-lot orders may have created.

44.     A total of 66 lots of the potentially benefitting sell orders were ultimately filled, with prices ranging from 507 to 508.75. These prices were between one and eight ticks higher than the prices Moncada received when he filled his buy orders before the large-lot orders. Therefore, Moncada bought multiple contracts at 506.5 and 506.75 and sold them for 507 and 508.75.

               ***b.    Example of Activity Intending to Push the Market Price Down***

45.     On October 27, 2009, between 9:36:00 a.m. and 9:38:01 a.m., Moncada engaged in a pattern of manual trading activity in an attempt to manipulate downward the price of the December 2009 Wheat Futures Contract while trading in the BES account.

46.     As discussed more fully below, Moncada sold 25 lots of the December 2009 Wheat Futures Contract at prices of 523.5 and 523.75, in order to build a short position. Moncada then

used all three of his trading tactics in an attempt to gain a financial benefit. First, he placed large-lot orders and then immediately cancelled them. Second, when he placed the large-lot orders, he did so at the best offer price when there were already several orders at that best offer price. By placing and then cancelling large-lot orders at the best offer price, Moncada's large-lot orders had little chance of being filled. In doing so, Moncada intended to create the misleading impression of increasing liquidity (on the sell side) in the market with the intent to move the market price downward. During this period, the market price dropped as low as 522. Moncada also used his third trading tactic of placing potentially benefiting buy orders (small lot long positions) to offset his previous short position at the lower prices that may have resulted from these trading tactics.

47.     Specifically, beginning at 9:36:00 a.m., and continuing throughout the next two minutes, Moncada placed a series of potentially benefitting orders at prices of 523, 522.75, 522.5, 522.25, and 521.75, which were several ticks below the best bid price at the time Moncada entered them (Trading Tactic 3). These potentially benefiting orders rested unfilled in the market.

48.     As detailed below, Moncada then manually entered a series of five large-lot sell orders of 302 and 402 lots, over a period of less than two minutes. Moncada manually canceled these five large-lot orders within 0.9 seconds of entry (Trading Tactic 1).

| Time | Size | Price | Distance From Best Bid (Ticks) | Filled Lots | Time to Cancel |
|------|------|-------|-------------------------------|-------------|----------------|
| 9:36:16.765 a.m. | 302 | 524 | 0 | 0 | 0.797 |
| 9:36:26.751 a.m. | 402 | 523.75 | 0 | 0 | 0.827 |
| 9:37:00.130 a.m. | 402 | 523.5 | 0 | 0 | 0.649 |
| 9:37:30.523 a.m. | 402 | 522.75 | 0 | 0 | 0.729 |
| 9:37:59.620 a.m. | 402 | 522 | 0 | 0 | 0.712 |

49.     Of the 1,910 lots comprising these five large-lot sell orders, none were filled, and all of the 1,910 lots canceled. These large-lot sell orders were entered in a manner consistently at

the best offer price, when there were already several orders ahead of Moncada's at the best offer price (Trading Tactic 2). This allowed Moncada to place large-lot orders that would appear in the best of book on Globex, while minimizing the risk that the large-lot orders would be filled. The prices of the large-lot sell orders Moncada placed in these seconds fell with the market price; the first large-lot sell order was at 524, the last at 522.

50.     Between 9:37:21 a.m. and 9:38:01 a.m., a series of Moncada's earlier potentially benefiting orders were filled at prices of two to eight ticks lower than his previously acquired short positions. Moncada entered these potentially benefitting orders with the intent to take advantage of any possible market price movement resulting from the misleading impression of increasing liquidity on the sell side which he had caused by placing and immediately canceling his large-lot orders may have created.

51.     Over the period of less than two minutes described above, Moncada accumulated a short position of 55 lots at prices of 523.5 and 523.75. Moncada then closed out 42 lots of that position with buy trades at prices of 521.75 to 523, representing a price movement in favor of his short position by two to eight ticks. Therefore, Moncada sold multiple contracts at 523.5 to 506.75 and bought them for 521.75 to 523.

### c.     Moncada Repeatedly Employed His Manipulative Trading Strategy on Each of the Relevant Dates.

52.     The examples above illustrate how Moncada attempted to manipulate the price of the December 2009 Wheat Futures Contract by using his three trading tactics in his manipulative trading strategy. Moncada repeated this trading strategy multiple times on each of the relevant dates in his attempt to manipulate the price of the December 2009 Wheat Futures Contract in the BES account and in the Serdika account. Specifically, on each of the relevant dates - with the intent to avoid being hit or lifted by other market participants - he placed and immediately

canceled between 37 and 118 large-lot orders (Trading Tactic 1), at or near the best bid or offer

price (Trading Tactic 2). Further, on each of the relevant dates, Moncada placed small-lot

potentially benefiting orders on the opposite side of the market from his large-lot orders with the

intent of taking advantage of any price movements that might result from the misleading

impression of increasing liquidity that his large-lot orders created (Trading Tactic 3).

### ii.    Moncada's Large-Lot Trading Activity Was Significantly Different from the Rest of the Market

53.     During the relevant dates, Moncada's large-lot manual trading activity in the

December 2009 Wheat Futures Contract was significantly different than the large-lot trading

activity by the other market participants in terms of volume and the speed at which he consistently

canceled his large-lot orders.

54.     As shown in the chart below, during the relevant dates, Moncada entered and

immediately canceled the following volumes of large-lot orders with overall high cancelation rates.

By contrast, the rest of the market entered significantly less volume, and canceled significantly less

of the volume of its large-lot orders. Contrary to Moncada's large-lot trading activity, most of the

other market participant's large-lot orders were filled completely or partially, and remained on the

market for extended periods of time.

| Relevant Dates | MONCADA | | MARKET | | CANCELLATION RATE | |
| --- | --- | --- | --- | --- | --- | --- |
| | Total Volume of Large-Lot Orders | Total Canceled Volume of Large-Lot Orders | Total Volume of Large-Lot Orders | Total Canceled Volume Of Large-Lot Orders | Moncada's by Volume | Market's by Volume |
| October 6 | 18,924 | 18,711 | 4,580 | 477 | 98.87% | 10.41% |
| October 12 | 15,766 | 15,546 | 14,323 | 4,493 | 98.60% | 31.37% |
| October 14 | 29,216 | 28,860 | 12,730 | 2,673 | 98.78% | 21.00% |
| October 19 | 35,551 | 35,201 | 18,958 | 7,689 | 99.02% | 40.56% |
| October 26 | 42,878 | 41,986 | 20,549 | 1,096 | 97.71% | 5.33% |
| October 27 | 34,161 | 33,659 | 9,207 | 1,736 | 98.53% | 19.23% |
| October 29 | 49,088 | 48,293 | 18,138 | 5,995 | 99.66% | 33.00% |
| October 30 | 16,438 | 16,433 | 10,248 | 3200 | 99.97% | 31.23% |

55.     For example, on October 29, 2009, Moncada entered 118 large-lot orders for a total volume of 49,088 lots.  Moncada canceled, either completely or partially, all of his large-lot orders, and was partially filled for only 165 lots on this day.  The remaining 48,923 lots were canceled, representing 99.66 percent of the total volume of his large-lot orders.

56.     To the contrary, on the same day, the rest of the market only placed 51 large-lot orders for a total volume of 18,138 lots.  The rest of the market canceled, either completely or partially, only 16 of those large-lot orders for a total volume of 5,995 lots.  As such, the market only canceled 33 percent of the total volume of its large-lot orders on October 29, 2009, as compared to Moncada's cancellation rate of 99.66 percent.

57.     Moncada's trading activity was also significantly different from the rest of the market with respect to the duration that his large-lot orders stayed open in the market.  On the relevant dates, Moncada's large-lot orders were in the market for an average of 2.06 seconds, with

some canceled within 226 milliseconds. To the contrary, the average amount of time that a large-lot order placed by another market participant remained open in the market was 9 hours 16 minutes and 35 seconds, during the relevant dates. Based on the speed and immediacy in which Moncada canceled his large-lot orders, especially as compared to rest of the market, he did not intend for each of his large-lot orders to be filled.

### iii. Moncada's Use of "Iceberg" Orders

58.     Globex allows traders to enter "iceberg" orders, which are orders for a large number of lots that only display a small number of the lots to the market at any one time as predetermined by the trader. If the initial visible quantity of lots in the "iceberg" is filled, then additional lots will automatically be shown to the market. This type of order entry allows traders to execute large-lot trades without signaling to the market their intention to fill a large quantity of lots. Therefore, traders who want to fill orders for large-lot quantities may use this order entry method to avoid the natural price movements that could potentially occur in reaction when orders, particularly large-lot orders, suddenly are placed in the market. This order entry method assists a trader in trying to get the best possible price for all of the lots the trader desires to fill.

59.     Moncada's lack of use of "iceberg" orders further illustrates that he had no intent to fill the vast majority of the large-lot orders he placed on the relevant dates.

60.     During the relevant dates, Moncada entered only four large-lot orders with the "iceberg" function, all of which were on October 27, 2009. By contrast, Moncada entered 710 large-lot orders showing the entire quantity to the market. However, Moncada frequently used "iceberg" orders to fill his orders ranging in size from 20 to 100 lots.

61.     Had Moncada intended for his large-lot orders to be filled, he could have used the "iceberg" function to fill each of those large-lot orders. The "iceberg" function would have avoided causing any sudden price movement by the market. Rather than engage in this legitimate

16

trading strategy, Moncada used Trading Tactics 1, 2 and 3 to create a misleading impression of increasing liquidity in the market so he could attempt to benefit financially from price movements.

62.    By engaging in the trading tactics described in the above paragraphs, with the requisite intent to affect prices, Moncada, BES and Serdika attempted to manipulate the prices of the December 2009 Wheat Futures Contracts on October 6, 12, 14, 19, 26, 27, 29, and 30, 2009.

## C.    Fictitious Sales and Non-Competitive Transactions

63.    On the trading dates of October 6, 12, 15, and 29, 2009, Moncada, while trading in the BES and Serdika accounts, entered opposing buy and sell orders in the December 2009 Wheat Futures Contracts into Globex for the purpose of transferring positions between an account in the name of BES and an account in the name of Serdika with the knowledge and intent that the orders would match opposite one another in these accounts with common ownership.

64.    For example, at 10:20:54 a.m. on October 6, 2009, Moncada entered an order in the Serdika account to sell 40 lots of the December 2009 Wheat Futures Contract at a price of 466. Less than five seconds later, Moncada entered an order in the BES account to buy 40 lots of the December 2009 Wheat Futures Contract at 466.25. Two seconds later, Moncada moved the price of the Serdika order to match the BES order so that both orders were completely filled at 466.25, with 40 lots of the BES sell order filled by the Serdika buy order.

65.    These transactions were intended to transfer positions from the BES account to the Serdika account by having the opposite orders find and match each other on Globex without the intent to take a genuine *bona fide* position in the market.

66.    Moncada placed other near-simultaneous buy and sell orders at the same price in the Serdika account and BES account on October 6, 12, 15 and 29, 2009.

67.     CBOT Rules 534 and 539 do not allow Moncada to execute trades in the manner described herein.

68.     By his own account, Moncada admitted that he simultaneously placed offsetting orders in the BES and Serdika accounts in an effort to "transfer" or move the positions from the BES account to the Serdika account.

69.     BES and Serdika, through its agents and employees, including Moncada, intended for the offsetting transactions to negate risk and price competition, and the transactions did in fact negate risk and price competition.

70.     BES and Serdika, through its agents and employees, including Moncada, knew at the time BES and Serdika entered into the offsetting transactions that the transactions resulted in a position and financial nullity.

## V.   VIOLATIONS OF THE CEA

### COUNT ONE

**ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICES ON OCTOBER 6, 2009 Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)**

71.     Paragraphs 1 through 62 are realleged and incorporated herein by reference.

72.     Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

73.     On October 6, 2009, Moncada intended to affect the prices of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

74.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of BES, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, BES is liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

75.     Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 6, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

### COUNT TWO

**ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICES ON OCTOBER 12, 2009**
**Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)**

76.     Paragraphs 1 through 62 are realleged and incorporated herein by reference.

77.     Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

78.     On October 12, 2009, Moncada intended to affect the prices of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

79.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of BES, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, BES is liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

80.     Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 12, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

### COUNT THREE

**ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICES ON OCTOBER 14, 2009
Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)**

81.     Paragraphs 1 through 62 are realleged and incorporated herein by reference.

82.     Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

83.     On October 14, 2009, Moncada intended to affect the prices of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

84.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of BES, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, BES is liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

85.     Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 14, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

### COUNT FOUR

**ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICES ON OCTOBER 19, 2009 Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)**

86.     Paragraphs 1 through 62 are realleged and incorporated herein by reference.

87.     Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

88.     On October 19, 2009, Moncada intended to affect the prices of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

89.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of BES, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, BES is liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

90.     Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 19, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

## COUNT FIVE

### ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICES ON OCTOBER 26, 2009
Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)

91.     Paragraphs 1 through 62 are realleged and incorporated herein by reference.

92.     Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

93.     On October 26, 2009, Moncada intended to affect the prices of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

22

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

94.    Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of BES and Serdika, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, BES and Serdika are liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

95.    Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 26, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

### COUNT SIX

**ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICES ON OCTOBER 27, 2009 Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)**

96.    Paragraphs 1 through 62 are realleged and incorporated herein by reference.

97.    Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

98.    On October 27, 2009, Moncada intended to affect the price of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

99.      Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of BES and Serdika, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, BES and Serdika are liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

100.      Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 27, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

### COUNT SEVEN

### ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICE ON OCTOBER 29, 2009
Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)

101.      Paragraphs 1 through 62 are realleged and incorporated herein by reference.

102.      Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

103.      On October 29, 2009, Moncada intended to affect the price of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

104.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of Serdika, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, Serdika is liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

105.     Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 29, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

## COUNT EIGHT

**ATTEMPTED MANIPULATION OF THE DECEMBER 2009 #2 SOFT RED WINTER WHEAT FUTURES CONTRACT PRICE ON OCTOBER 30, 2009**
**Violations of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13(b) and 13(a)(2) (2006)**

106.     Paragraphs 1 through 62 are realleged and incorporated herein by reference.

107.     Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

108.     On October 30, 2009, Moncada intended to affect the price of the December 2009 Wheat Futures Contract, and engaged in repeated overt acts in furtherance of that intent.

Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2)(2006).

109.    Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation.  Because the actions of the officers, employees and agents of Serdika, including, but not limited to Moncada, that violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006), were within the scope of their employment, Serdika is liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

110.    Each and every overt action in furtherance of the attempt to manipulate the price of the December 2009 Wheat Futures Contract on October 30, 2009, including but not limited to, every bid, offer, purchase, sale, cancellation, and trade, is alleged herein as a separate and distinct violation of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C §§ 9, 13b and 13(a)(2) (2006).

## COUNT NINE

### FICTITIOUS SALES
### Violations of Section 4c(a) of the Act, 7 U.S.C. § 6c(a)(1)

111.    The allegations set forth in paragraphs 1 through 70 are realleged and incorporated herein by reference.

112.    Section 4c(a)(1) of the Act, as amended, to be codified at 7 U.S.C. § 6c(a)(1), provides, in relevant part, "It shall be unlawful for any person to offer to enter into, enter into, or confirm the execution of a transaction described in paragraph (2) involving the purchase or sale of any commodity for future delivery . . . if the transaction is or may be used to (A) hedge any transaction in interstate commerce in the commodity or the product or byproduct of the

commodity," or "(C) deliver any such commodity sold, shipped or received in interstate commerce for the execution of the transaction." 7 U.S.C. § 6c(a)(1).

113.    Paragraph (2) of Section 4c(a), in turn, provides, "[a] transaction referred to in paragraph (1) is a transaction that . . . is, is of the character of, or is commonly known to the trade as, a 'wash sale' or 'accommodation trade' . . . or is a fictitious sale or is used to cause any price to be reported, registered or recorded that is not a true and *bona fide* price." 7 U.S.C. § 6c(a)(2).

114.    On October 6, 12, 15, and 29, 2009, Moncada, as an agent and employee of both BES and Serdika, knowingly offered to enter into and entered into transactions that were fictitious sales in violation of Section 4c(a) of the Act, 7 U.S.C. § 6c(a), by simultaneously buying and selling the same number of lots of the CBOT #2 Soft Red Winter Wheat contracts for the same delivery month at the same price, with the expectation that both parties to the trades would offset against each other.

115.    Moncada, as an agent and employee of both BES and Serdika, intended to negate the risk and price competition normally attendant to futures transactions at the time Moncada entered into these offsetting trades. Moncada, as an agent and employee of both BES and Serdika, knew at the time he entered into the transactions that they negated risk and price competition.

116.    Each fictitious sale of any December 2009 Wheat Futures Contract bought or sold by Moncada, as an agent and employee of both BES and Serdika, on October 6, 12, 15, and 29, 2009, is alleged herein as a separate and distinct violation of Section 4c(a) of the Act, 7 U.S.C. § 6c(a).

117.    Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation. Because the acts, omissions,

27

and failures of the officers, employees and agents of BES and Serdika, including, but not limited to Moncada, that violated the Act were within the scope of their employment, BES and Serdika are liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2012).

**COUNT TEN**

**NON-COMPETITIVE TRANSACTIONS**
**Violations of Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2012)**

118.    The allegations set forth in paragraphs 1 through 70 are realleged and incorporated herein by reference.

119.    Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2012), provides, in relevant part:

> *Competitive execution required; exceptions.* All purchases and sales of any commodity for future delivery . . . on or subject to the rules of a contract market shall be executed openly or competitively by open outcry or posting of bids and offers or by other equally open and competitive methods, in the trading pit or ring or similar place provided by the contract market, during the regular hours prescribed by the contract market for trading in such commodity. . . . *Provided however,* That this requirement shall not apply to transactions which are executed noncompetitively in accordance with the written rules of the contract market which have been submitted to and approved by the Commission, specifically providing for the noncompetitive execution of such transactions.

120.    BES and Serdika, through its agents and employees, including Moncada, knowingly entered into futures transactions on October 6, 12, 15, and 29, 2009, in the CBOT #2 Soft Red Winter Wheat contract that were not executed openly and competitively, in violation of Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2012).

121.    BES's and Serdika's futures transactions in the CBOT #2 Soft Red Winter Wheat contract were not executed in accordance with the written rules of CBOT, Rules 534 and 539,

which had been submitted to and approved by the Commission specifically providing for the non-competitive execution of such transactions.

122.    Each non-competitive trade by Moncada, as an agent and employee of both BES and Serdika, on October 6, 12, 15, and 29, 2009, is alleged herein as a separate and distinct violation of Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2012).

123.    Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), provides that the act, omission or failure of any official, agent, or other person acting for any corporation within the scope of his employment shall be deemed the act of the corporation. Because the acts, omissions, and failures of the officers, employees and agents of BES and Serdika, including, but not limited to Moncada, that violated the Act were within the scope of their employment, BES and Serdika are liable for those acts constituting violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2012).

## VI.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers:

A.    Find Defendants liable for violating Sections 4c(a), 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 6c(a), 9, 13b, and 13(a)(2) (2006), and Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a)(2012);

B.    Enter an order of permanent injunction restraining and enjoining Defendants and any of their affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly violating Sections 4c(a), 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 6c(a), 9, 13b and 13(a)(2) (2006), and Commission Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2012);

C.     Enter an order of permanent injunction restraining Defendant Moncada and any of his affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert with him from directly or indirectly engaging in, controlling, or directing the trading for any commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2011)) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), in any markets or on any entity regulated by the Commission, for himself or on behalf of any other person or entity, whether by power of attorney or otherwise;

D.     Enter an order of permanent injunction restraining Defendants BES and Serdika and any of their affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert with them from directly or indirectly engaging in, controlling, or directing the trading for any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts, in any markets or on any entity regulated by the Commission, for themselves or on behalf of any other person or entity, whether by power of attorney or otherwise;

E.     applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

F.     acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012);

G.     Enter an order directing Defendants to pay civil monetary penalties, to be assessed by the Court, in an amount not to exceed the higher of $140,000 or triple the monetary gain to them for each violation of the Act, as described herein;

H.     Enter an order providing for such other and further remedial and ancillary relief, including, but not limited to, disgorgement and trading and registration bans, as this Court may deem necessary and appropriate; and,

H.     Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2).

Respectfully submitted,

Elizabeth L. Davis (D.C. Bar No. 465215)
Andrew Ridenour (D.C. Bar No. 501628)
Brian M. Walsh (Member, Maryland Bar)
Kenneth McCracken (Missouri Bar No. 44049)
Richard Glaser (Member, New York State Bar
and U.S. District Court for the Southern District
of New York Bar No. RG8652)
U.S. Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
Tel: (202) 418-5301 (Davis)
Tel: (202) 418-5438 (Ridenour)
Tel: (202) 418-5116 (Walsh)
Tel: (202) 418-5348 (McCracken)
Tel: (202) 418-5358 (Glaser)
Fax: (202) 418-5937
edavis@cftc.gov
aridenour@cftc.gov
bwalsh@cftc.gov
kmccracken@cftc.gov
rglaser@cftc.gov

Dated this 3rd day of December, 2012.

31