# EXHIBIT 9

TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT ERIC MONCADA

                                                                    1

1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF NEW YORK

3    UNITED STATES COMMODITY      )
     FUTURES TRADING              )
4    COMMISSION,                  )
                                  )
5         Plaintiff,              )
                                  )
6       vs.                       ) No. 12-cv-8791 (CM)
                                  ) (GWG)
7    ERIC MONCADA; BES            )
     CAPITAL LLC; and             )
8    SERDIKA LLC,                 )
                                  )
9         Defendants.             )

10      The deposition of STEVEN E. WOLLACK, ESQ.,

11   called for examination pursuant to the Rules of

12   Civil Procedure for the United States District

13   Courts pertaining to the taking of depositions,

14   taken before JENNIFER M. DALY, a Certified Shorthand

15   Reporter, within and for the County of Cook and

16   State of Illinois, at 525 West Monroe Street,

17   Suite 1100, Chicago, Illinois, on the 2nd day of

18   December, 2013, at the hour of 8:07 o'clock a.m.

19

20

21

22

23

24

```
                                                                    2
 1                     APPEARANCES:

 2      COMMODITY FUTURES TRADING COMMISSION

 3         BY:  MR. ANDREW RIDENOUR, ESQ.

 4              aridenour@cftc.gov

 5              MS. JENNIFER S. DIAMOND, ESQ.

 6              jdiamond@cftc.gov

 7              MR. KENNETH McCRACKEN, ESQ. (Via Video)

 8                 kmccracken@cftc.gov

 9              1155 21st Street, N.W.

10              Washington, D.C.  20581

11              (202) 418-5438

12              (202) 418-5531 (fax)

13                 On behalf of the Plaintiff;

14

15      LITMAN, ASCHE & GIOIELLA, LLP

16         BY:  MR. RICHARD M. ASCHE, ESQ.

17              richardasche@lagnyc.com

18              140 Broadway

19              New York, New York 10005

20              (212) 809-4500

21              (212) 742-8757 (fax)

22                 On behalf of the Defendants.

23      REPORTED BY:  JENNIFER M. DALY, RPR, CSR, CCR

24      LICENSE NO.:  084-004688
```

3

```
 1                        I N D E X

 2    WITNESS:  STEVEN E. WOLLACK, ESQ.
```

```
 3    EXAMINATION                                PAGE

 4    BY MR. RIDENOUR                            6

 5    BY MR. ASCHE                               138

 6

 7

 8                       E X H I B I T S

 9    CFTC                                       PAGE

10    No. 1 -                                    6

11    No. 2 -                                    15

12    No. 3 -                                    54

13    No. 4 -                                    76

14    No. 5 -                                    83
```

```
15

16

17

18

19

20

21

22

23

24
```

```
                                                              16
```

1   BY MR. RIDENOUR:
2       Q.   Are you providing -- is your expert
3   testimony based on an analysis of data?
4       A.   Partially, yes.
5       Q.   Do you have a background analyzing
6   trading data?
7       A.   A general background in the course of my
8   experience as a trader as a member -- as a chairman
9   of the disciplinary committees, do I sit there and
10  analyze data the same way as a market regulation
11  person would who's an auditor, no, but in terms of a
12  general oversight, a general looking at data, yes,
13  I've done that.
14      Q.   Mr. Wollack, the document that we've
15  marked as Exhibit 2, the document doesn't have page
16  numbers on it?
17      A.   Correct.
18      Q.   Can we agree to start marking pages
19  starting on the page with the header,
20  "Qualifications as an Expert" as page 1?
21           MR. ASCHE:  Yes.
22           THE WITNESS:  Yes.
23  BY MR. RIDENOUR:
24      Q.   Okay.  Could you, I guess, just go ahead

Wollack, Steven

1   me no.  And I relied on that.
2       Q.    What did Mr. Moncada tell you he used to
3   cancel -- to enter and cancel his orders?
4       A.    He said he did it manually.
5       Q.    And that conversation was either
6   July 11th or July 25th?
7       A.    Correct.  I assume it was one of those.
8       Q.    What else did you discuss with
9   Mr. Moncada on July 11th?
10      A.    Only in his assistance in getting me
11  data for the -- certain of the trade dates that were
12  in question that I didn't have and didn't have a
13  chance to review and so forth.
14      Q.    What else did you discuss with
15  Mr. Moncada on July 25th?
16      A.    That would, basically, be it.  Most of
17  my substantive conversations were with Mr. Asche.
18      Q.    Other than asking for Mr. Moncada's
19  assistance in getting data and the question as to
20  whether or not he was using high-frequency trading
21  algorithm, what other topics did you discuss with
22  Mr. Moncada?
23      A.    I may have -- I think I may have asked
24  him whether or not he had any particular trading

1  those days?

2  A.  I did ask him which trades the CFTC was

3  specifically looking at, and he, quite honestly,

4  didn't seem to know.

5  Q.  For the eight days charged in the

6  Complaint, was that your only discussion with

7  Mr. Moncada about trading on those eight days?

8  A.  I believe so.

9  Q.  Mr. Wollack, I'd like to ask you a few

10  questions about your general experience looking at

11  trading data.

12  Have you ever had any experience doing

13  statistical analysis of trade data?

14  A.  No.

15  Q.  Earlier you had mentioned that in the

16  context of Business Conduct Committee proceedings at

17  the CME that you had looked at time and sales data.

18  When you looked at those time and sales data, what

19  were you looking for?

20  A.  We were looking for whether the trades

21  could have occurred when people said they occurred.

22  Q.  Those time and sales data, did those

23  relate to pit trades?

24  A.  Back then, yes.

107

1  Q. So, those time and sales data did not
2  relate to electronic trading?
3  A. There was not electronic trading in
4  those days to speak of.
5  Q. Prior to your retention in this case,
6  had you ever reviewed trade data of an -- and aside
7  from your review of time and sales data at Business
8  Conduct Committee proceedings, had you reviewed
9  trading data of the sort that was produced to you by
10 Mr. Asche?
11 A. No, except I have reviewed daily and
12 monthly statements before, but not the other data
13 which showed the -- all the trades of all the
14 various traders and what orders they entered, what
15 orders they canceled, et cetera.
16 Q. And the daily and monthly statements
17 wouldn't include times the trades were executed,
18 correct?
19 A. Correct, it wouldn't.
20 Q. Mr. Wollack, if I can point you back to
21 your report, which we've marked as Exhibit 2, in the
22 second paragraph on Page 2 of your report, you refer
23 to "Moncada's trading style."
24 A. Mm-hmm.

Wollack, Steven

1     Q.    -- and carried overnight positions.
2           Did you review the data to determine
3    what other market participants were doing in terms
4    of their trading style?
5     A.    No, I did not.
6           I mean, I was aware from -- is it
7    Mr. Bessembinder?
8     Q.    Bessembinder?
9     A.    That Mr. Moncada's trades, percentage of
10   large orders vis-a-vis others, that I accepted his
11   data.  I didn't go and review the other traders and
12   what they did with their large orders and how many
13   trades they made and so forth.
14    Q.    Looking over to page 3 of your report
15   marked as Exhibit 2, in the first paragraph, about
16   halfway down the first paragraph you say, "In most
17   cases he was adding to an existing position."
18         Do you see that?
19    A.    The first full paragraph or the partial
20   at the top?
21    Q.    The first partial paragraph.
22    A.    Yes.
23    Q.    What do you mean by, "In most cases"?
24    A.    Well, on the -- on the dates in

Wollack, Steven

120

1    Q.    You said that you didn't see any spikes

2  of such as a five cent move in 30 seconds to a

3  minute after the large lot order.  Did you do any

4  analysis of trade data to determine what price

5  movements did occur following the 710 large lot

6  orders Moncada placed on the eight days charged in

7  the Complaint?

8    A.    No, I did not.

9    Q.    Did you --

10    A.    I found -- I did look at Bessembinder's

11  report, and his data seemed to support my opinion,

12  although he reached a different conclusion.

13    Q.    By saying that his data supports your

14  opinion, what do you mean?  What data --

15    A.    I think he -- I think somewhere in his

16  report, if my recollection is correct, he said the

17  result of these large orders would increase the

18  bid-ask by one-tenth of one cent, or something,

19  which is less than the -- a one-quarter tick.

20        In other words, it didn't move the

21  market, and he says this is a result, this becomes a

22  result of excessive market movement.  And it just

23  isn't there.  The data's not there.  The market

24  never moved.

Wollack, Steven

121

1           He makes a statement.  I could look at
2  it in his report, but . . .
3      Q.   Did you conduct any analysis of trade
4  data for time periods when Moncada was not placing
5  large lot orders to determine what average price
6  movement is in the CBOT wheat futures market?
7      A.   No, I just basically looked at the time
8  and sales and looked to see whether the market
9  during the day was moving in one-quarter tick
10 increments in which case it was doing so almost all
11 the time.
12     Q.   So you just eyeballed the time and
13 sales?
14     A.   Yeah, I looked down, but I didn't do
15 a -- any kind of detailed analysis.
16     Q.   Looking back --
17     A.   I did look at time and sales in relation
18 to some of his large lot orders that were entered
19 into the market to see whether that had an affect of
20 having the market run or not, and you know --
21     Q.   By "market run," what do you mean?
22     A.   Puts in an order to buy a large lot at
23 534 and a quarter, and I looked to see what the next
24 trades were, and it was 531 and a half, 531 and a

Wollack, Steven

129

1    see where the large orders moved the market.  The
2    market seemed to be orderly trading in one-quarter
3    tick minimum increments.
4             What I was referring to here is that
5    somebody who trades a given market, in this case the
6    wheat market, if he's watching the market and he
7    sees all of a sudden the bids increase dramatically
8    and then decrease and increase and decrease, he's
9    going to see they're frequent cancellations, and he
10   will realize -- if he's an experienced trader, he'll
11   realize what's happening, that somebody's, you know,
12   doing this.  It could be a high frequency trader or
13   not.
14        Q.    Did you analyze the data to determine
15   if, in fact, other traders were reacting to
16   Moncada's large orders and cancellations?
17        A.    No, I did not.
18             MR. ASCHE:  Well, other than --
19   BY MR. RIDENOUR:
20        Q.    Have you ever --
21             MR. ASCHE:  -- what he testified
22      before that he saw that the market didn't go up
23      or down more than one-quarter tick.
24             MR. McCRACKEN:  The testimony speaks

Wollack, Steven

Case 1:12-cv-08791-CM-GWG   Document 54-36   Filed 01/29/14   Page 13 of 14

UNITED STATES COMMODITY FUTURES TRADING COMMISSION vs. ERIC MONCADA
Steven Wollack on 12/02/2013                                    Page 141

```
 1   STATE OF ILLINOIS    )
 2                        )   SS:
 3   COUNTY OF C O O K    )
 4
 5           I, JENNIFER M. DALY, a certified shorthand
 6   reporter within and for the County of Cook and State
 7   of Illinois, do hereby certify that heretofore,
 8   to-wit, December 2, 2013, personally appeared before
 9   me, at 525 West Monroe Street, Suite 1100, Chicago,
10   Illinois, STEVEN E. WOLLACK, ESQ., in a cause now
11   pending and undetermined in the Circuit Court of
12   Cook County, Illinois, wherein COMMODITY FUTURES
13   TRADING COMMISSION is the Plaintiff, and ERIC
14   MONCADA; BES CAPITAL LLC; AND SERDIKA LLC, are the
15   Defendants.
16           I further certify that the said STEVEN E.
17   WOLLACK, ESQ. was first duly sworn to testify the
18   truth, the whole truth and nothing but the truth in
19   the cause aforesaid; that the testimony then given
20   by said witness was reported stenographically by me
21   in the presence of the said witness, and afterwards
22   reduced to typewriting by Computer-Aided
23   Transcription, and the foregoing is a true and
24   correct transcript of the testimony so given by said
```

Case 1:12-cv-08791-CM-GWG   Document 54-36   Filed 01/29/14   Page 14 of 14

UNITED STATES COMMODITY FUTURES TRADING COMMISSION vs. ERIC MONCADA
Steven Wollack on 12/02/2013                                       Page 142

1  witness as aforesaid.
2          I further certify that the taking of this
3  deposition was pursuant to notice and that there
4  were present at the deposition the attorneys
5  hereinbefore mentioned.
6          I further certify that I am not counsel for
7  nor in any way related to the parties to this suit,
8  nor am I in any way interested in the outcome
9  thereof.
10         IN TESTIMONY WHEREOF:  I have hereunto set
11 my hand and affixed my seal this 3rd day of
12 December, 2013.
13
14         *[signature]*
15
16         _____
17         JENNIFER M. DALY, RPR, CSR, CCR
18         LIC. NO. 084-004688
19
20
21
22
23
24