# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **UNITED STATES COMMODITY FUTURES TRADING COMMISSION**, <br> Plaintiff, <br><br> v. <br><br> **ERIC MONCADA; BES CAPITAL LLC; and SERDIKA LLC** <br> Defendant(s). | Civil Action No. 12-cv-8791 (CM) (GWG) |

## PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE EXPERT REPORT OF STEVEN WOLLACK

## Table of Contents

I.     SUMMARY ....................................................................................................... 1

II.     BACKGROUND AND PROCEDURAL HISTORY ....................................... 2

   A.     THE CFTC'S CLAIMS AGAINST MONCADA ............................................. 2

   B.     SUMMARY JUDGMENT PLEADINGS ........................................................... 3

III.     LEGAL ARGUMENT ..................................................................................... 3

   A.     LEGAL STANDARDS ....................................................................................... 3

   B.     WOLLACK IS UNQUALIFIED TO RENDER AN EXPERT OPINION REGARDING THE RELEVANT ISSUES IN THIS CASE ................................................................ 6

   C.     THE WOLLACK REPORT OFFERS UNRELIABLE STATEMENTS .................................. 8

      1.     *The Wollack Report Has No Methodology* ........................................................ 9

      2.     *The Wollack Report has Unreliable Statements Regarding Moncada's Trading Motivations* ....................................................................................... 14

      3.     *The Wollack Report has Unreliable Statements Regarding Other Traders in the Market* ............................................................................................................. 16

   D.     THE WOLLACK REPORT OFFERS IRRELEVANT STATEMENTS REGARDING "RISK" THAT DO NOT AID THE TRIER OF FACT ................................................... 18

   E.     THE WOLLACK REPORT OFFERS INADMISSIBLE LEGAL CONCLUSIONS ................. 20

   F.     THE WOLLACK REPORT OFFERS ONLY INADMISSIBLE NARRATIVES WHEN STRIPPED OF ITS UNRELIABLE STATEMENTS, IRRELEVANT STATEMENTS, AND LEGAL CONCLUSIONS .......................................................................... 21

IV.     CONCLUSION ............................................................................................... 22

**Table of Authorities**

### Cases

*Algarin v. N.Y.C. Dep't of Correction*, 460 F.Supp.2d 469 (S.D.N.Y. 2006) .......................... 5, 14

*Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989)...................................... 21

*Berk v. Bates Advertising USA, Inc.,* No. 94 Civ 9140, 1998 WL 726030 (S.D.N.Y. Oct. 14, 1998) .................................................................................................................................... 5

*Bourjaily v. United States*, 483 U.S. 171 (1987) ........................................................................ 4

*CFTC v. Enron Corp.*, Civ. No. H-03-909, 2004 U.S. Dist. LEXIS 28794 (S.D. Tex. Mar. 4, 2004) .................................................................................................................................. 19

*CFTC v. Parnon Energy, Inc.*, 875 F.Supp.2d 233 (S.D.N.Y. 2012) ........................................ 2, 9

*Compania Embotelladora Del Pacifico v. Pepsi Cola Co.*, 650 F.Supp.2d 314 (S.D.N.Y. 2009) ............................................................................................................................... 5, 13, 16

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)............................................... 3, 4, 5, 6

*DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005) ..................................................................... 6, 21

*DiPlacido v. CFTC*, 364 Fed.Appx. 657 (2d Cir. 2009)........................................................... 19, 20

*Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.*, 314 F.3d 48 (2d Cir. 2002).................. 5

*General Electric Co. v Joiner*, 522 U.S. 136 (1997) ................................................................. 4, 13

*Gracey v. JP Morgan Chase & Co.*, 730 F.3d 170 (2d Cir. 2013) ............................................. 19

*Highland Capital Mgmt. L.P. v Schneider*, 379 F.Supp.2d 461 .................................................. 21

*Highland Capital Mgmt. L.P. v Schneider*, 551 F.Supp.2d 173 (S.D.N.Y. 2008)................... 6, 21

*In re Amaranth Natural Gas Commodities Litigation.*, 587 F.Supp.2d 513 (S.D.N.Y. 2008) ..... 18

*In re Blech Secs. Litig.,* 94 Civ. 7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003).................. 8

*In the Matter of Hohenberg Bros.*, [1975-1977 Transfer Binder] Comm. Fut. L. Rep. ¶ 20,271 (CFTC Feb. 18, 1977).......................................................................................................... 2

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) ...................................................... 4, 5, 7, 18

*Marvel Worldwide, Inc. v. Kirby*, 777 F.Supp.2d 720 (S.D.N.Y. 2011) ........................................ 4

*Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) .............................................. 6, 21

*Minasian v. Standard Chartered Bank PLC,* 109 F.3d 1212 (7th Cir. 1997) ................................ 5

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ........................................................ 4, 7

*Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450 (S.D.N.Y. March 1, 2001) .......... passim

*SEC v Badian*, 822 F.Supp.2d 352 (SD.N.Y. 2011) ...................................................... 4, 6, 13, 21

*The Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Amer. Secs., LLC*, 691 F. Supp 2d. 448 (S.D.N.Y. 2010) ........................................................................................ 6

*U.S. v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ...................................................................... 6

*US v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ...................................................................... 6, 21

*US v. Scop*, 846 F.2d 135 (2d Cir. 1988) ............................................................................. 6, 21

### Statutes and Regulations

17 C.F.R. § 1.38(a) (2012) ............................................................................................................ 3

7 U.S.C. § 6c(a) (2006) .................................................................................................................. 3

7 U.S.C. §§ 9 .................................................................................................................................. 2

Fed. R. Evid. 401 ...................................................................................................................... 5, 22

Fed. R. Evid. 402 ...................................................................................................................... 5, 22

Fed. R. Evid. 702 ...................................................................................................................... passim

**PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S MEMORANDUM
IN SUPPORT OF MOTION TO STRIKE
THE EXPERT REPORT OF STEVEN WOLLACK**

Plaintiff U.S. Commodity Futures Trading Commission ("CFTC") hereby submits this

Memorandum of Law in support of the Plaintiff's Motion to Strike the Expert Report of Steven

Wollack ("Memorandum").

## I.   SUMMARY

Defendant Eric Moncada ("Moncada") has attached as an exhibit to his Memorandum in

Opposition to Motion for Summary Judgment a 12 page report[1] prepared by Steven Wollack

("Wollack") on September 27, 2013 (the "Wollack Report") (Dkt. # 61-1).  For the Court to find

an expert report admissible, the proponent of that report must establish by a preponderance of the

evidence that the expert's opinions are "reliable and relevant."  The Wollack Report is neither.

First, the Wollack Report is unreliable because it lacks any support from the record, from the

trading data or Moncada himself for its conclusions and opinions.  Second, the Wollack Report is

irrelevant because it contains a discussion of risk that does not aid the trier of fact in making a

determination as to the legal issues.  Additionally, the Wollack Report is replete with

inadmissible legal conclusions.  The Court should strike the entire Wollack Report, or, in the

alternative, the sections this Court finds inadmissible for the specific reasons set forth below:

---

[1]The Wollack Report does not contain page numbers.  Thus, for ease of reference in this
Memorandum, page one of the Wollack Report is the page beginning with "I. Qualifications as
an Expert," page two begins with "II.  Opinion," and so forth.

1

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   The CFTC's Claims Against Moncada[2]

The CFTC has alleged that on October 6, 12, 14, 19, 26, 27, 29, and 30, 2009 (the "attempted manipulation dates"), Moncada attempted to manipulate the price of the December 2009 contract for CBOT #2 Soft Red Winter Wheat Futures (the "December 2009 Wheat Futures Contract") in violation of sections 6(c), 6(d), and 9(a)(2) of the Commodity Exchange Act ("the Act"), 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006).  The CFTC's allegations of attempted manipulation involved Moncada's placing and canceling orders for 200 lots or more of December 2009 Wheat Futures Contracts ("large-lot orders"), at or near the best bid or offer price in a manner to avoid being filled by the market and with the intent to create the misleading impression of increasing liquidity in the market, while also placing smaller-lot orders on the opposite side of the market with the intent of taking advantage of any price movements that might result from the misleading impression of increasing liquidity that his large-lot orders created.  *See, generally,* Complaint (Dkt. No. 1).  To prove attempted manipulation, the CFTC "must establish: (1) an intent to affect the market price of a commodity; and (2) some overt act in furtherance of that intent."  *CFTC v. Parnon Energy, Inc.*, 875 F.Supp.2d 233, 250 (S.D.N.Y. 2012) (citing *In the Matter of Hohenberg Bros.*, [1975-1977 Transfer Binder] Comm. Fut. L. Rep. ¶ 20,271 at 21,477 (CFTC Feb. 18, 1977)).  Additionally, the CFTC charged Moncada with engaging in fictitious sales and entering into non-competitive transactions on four trading dates

---

[2] The CFTC's Complaint also named two proprietary trading firms on whose behalf Moncada was trading, BES Capital LLC and Serdika LLC.  Neither firm appeared in this matter, and the Court granted the CFTC's motion for default judgment against them on March 6, 2014. (Dkt. 65).

in October 2009 in violation of Section 4c(a) of the Act, 7 U.S.C. § 6c(a) (2006) and Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2012).[3]

## B.    Summary Judgment Pleadings

On January 29, 2014, the CFTC filed a Motion for Summary Judgment Against Defendant Eric Moncada (Dkt. No. 52) and Plaintiff's Memorandum in Support of Its Motion for Summary Judgment Against Defendant Eric Moncada ("Summary Judgment Memo") (Dkt. No. 53).  As an exhibit to the Summary Judgment Memo, the CFTC attached an expert report prepared on April 25, 2013 by Dr. Hendrik Bessembinder (the "Bessembinder Report"). (Summary Judgment Memo, Ex. 7 (Dkt. No. 54-34)).  On February 29, 2013, Moncada filed his Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 63), and attached as an exhibit the Wollack Report (Dkt. No. 61-1).

## III.    LEGAL ARGUMENT

### A.    Legal Standards

In order for expert testimony to be admitted, the expert must be found to be qualified to render the expert opinion.  As explained in more detail below, once deemed qualified, the expert opinion must be reliable, relevant and not contain legal conclusions.  Fed. R. Evid. 702.

The Court is the "gatekeeper" to whether expert testimony is admissible under Federal Rule of Evidence 702.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993); See Advisory Committee Notes, 2000 Amendments, Fed.R.Evid. 702 (trial judges have "the responsibility of acting as gatekeepers to exclude unreliable expert testimony").  An individual can be qualified to give expert testimony as either a scientific expert or as an experience-based

---

[3] The Wollack Report makes no mention of the facts relevant to the CFTC's allegations of fictitious sales or non-competitive transactions.  *See generally*, Wollack Report.

expert; however, the *Daubert* admissibility standard "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999).  In this case, Wollack has been presented as an experience-based expert due to his commodity futures trading experience and prior work in the commodities industry.  (Deposition of Steven Wollack ("Wollack Dep." 14:6-15). A court must determine if an experience-based expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id* at 152; *see also, Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).  The burden falls on the party proffering an expert witness to establish by a preponderance of the evidence that the expert's testimony is admissible.  *Marvel Worldwide, Inc. v. Kirby*, 777 F.Supp.2d 720, 729 (S.D.N.Y. 2011) (McMahon, J.), *aff'd in relevant part*, 726 F.3d 119 (2d Cir. 2013) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

In determining whether the expert opinion is admissible, the Court must first determine whether the expert is "qualified" to express his opinion based on his knowledge, skill, experience, training or education.  *See* Fed. R. Evid. 702.  Even if an expert is deemed qualified, the expert opinion is admissible only if it is reliable and relevant, and therefore helpful to the Court.  *Id.*; *Daubert*, 509 U.S. at 589; *Kumho,* 526 U.S. at 152.

When determining whether an expert's opinions are reliable, the Court's focus must be on the expert's reasoning and methodology, not on the conclusions.  *SEC v Badian*, 822 F.Supp.2d 352, 357 (SD.N.Y. 2011) (citing *General Electric Co. v Joiner*, 522 U.S. 136, 146 (1997)).  It is vital "that judges not be deceived by the assertions of experts who offer credentials rather than analysis." *Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 529 (S.D.N.Y. March 1, 2001) (citing *Minasian v. Standard Chartered Bank PLC,* 109 F.3d 1212, 1216 (7th Cir.

1997)).  Impressive and extensive experience does not equate to methodology.  *See Algarin v. N.Y.C. Dep't of Correction*, 460 F.Supp.2d 469, 477 (S.D.N.Y. 2006); *Askin*, 130 F.Supp.2d at 529 (excluding expert on broker-dealers because testimony lacked a reliable methodology).

Expert opinions rendered without any analysis, studies, or facts to support those opinions do not meet the reliability threshold for admissibility.  *See Compania Embotelladora Del Pacifico v. Pepsi Cola Co.*, 650 F.Supp.2d 314, 319-20 (S.D.N.Y. 2009) (expert report excluded because it did not cite to any analysis, studies or facts to confirm his methodology); *Askin* , 130 F.Supp.2d at 530 (expert testimony excluded when the statements were mere conclusions by the expert unsupported by research, studies, or other generally accepted support for expert testimony).  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Kumho*, 526 U.S. at 157; *compare., e.g., Berk v. Bates Advertising USA, Inc.,* No. 94 Civ. 9140, 1998 WL 726030, at *3 (S.D.N.Y. Oct. 14, 1998) (admitting expert's opinion, based on experience, as to plaintiff's available job opportunities where expert explained specifics of experience and how relevant to analyzing plaintiff's circumstances).

Once the testimony of an expert is determined to be based on reliable methodology, the Court must evaluate the relevancy of the testimony by determining whether the information provided "will assist the trier of fact to understand the evidence or determine a fact in issue."  Fed.R.Evid. 702.  Expert testimony that is not probative of a key issue is irrelevant and inadmissible pursuant to Federal Rules of Evidence 401 and 402.  Fed. R. Evid. 401, 402; *Daubert*, 509 U.S. at 587, 591, 599; *Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.*, 314 F.3d 48, 60 (2d Cir. 2002).

Expert testimony on issues of law is inadmissible. *See SEC v. Badian*, 822 F.Supp.2d 352, 357 (S.D.N.Y. 2011) (citing *US v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991)). The expert cannot tell the trier of fact what result to reach. *See id.* (citing *US v. Scop*, 846 F.2d 135, 139-40 (2d Cir. 1988)). While an expert "can make factual conclusions that embrace an ultimate issue to be decided by the fact-finder, the expert cannot give testimony stating ultimate legal conclusions based upon those facts[.]" *Highland Capital Mgmt. L.P. v Schneider*, 551 F.Supp.2d 173, 182-83 (S.D.N.Y. 2008) (citing *Bilzerian*, 926 F.2d at 1294; *Scop*, 846 F.2d at 140; *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 510-11 (2d Cir. 1977)); *See also DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (affirming trial court's decision to exclude expert testimony in part because testimony offered legal conclusions).

**B.     Wollack is Unqualified to Render an Expert Opinion Regarding the Relevant Issues in this Case**

Wollack is unqualified to render any opinion on whether Moncada attempted to manipulate the December 2009 Wheat Futures Contract, and specifically the impact that Moncada's large-lot orders had on the market price of the December 2009 Wheat Futures Contract. Pursuant to Federal Rules of Evidence 702, a witness may testify in the form of an opinion so long as he is qualified as an expert by "knowledge, skill, experience, training or education…" in the relevant area. Fed. R. Evid. 702, *see also Daubert*, 509 U.S. at 587, 592-93. When making this determination, Courts look to the totality of the expert's qualifications. *The Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc of Amer. Secs., LLC*, 691 F. Supp 2d. 448, 460 (S.D.N.Y. 2010). Focus must rest on whether the potential expert, Wollack, possesses the experience and background to offer opinions concerning the specific subject matter to be tried. *See, e.g., U.S. v. Roldan-Zapata*, 916 F.2d 795, 805-06 (2d Cir. 1990) (area of

expertise relating to the specific factual issues should be the focus of the qualification analysis). The Court must determine if a non-scientific expert basing testimony on personal experience, such as Wollack, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho, 526, U.S. at 152; Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). In this case, specific to the issues before the Court, whether Moncada attempted to manipulate the December 2009 Wheat Futures Market in October 2009, Wollack's qualifications and experience are inadequate. As such, Wollack's expert report should be stricken from the record.

Wollack claims to be an expert capable of rendering an opinion regarding manipulation in the field of commodity futures trading based on his years of experience trading commodity futures and his prior service working in the commodities industry. (Wollack Report p. 1; Wollack Dep., 14:6-15). This is the sole basis for Wollack's claim to be an expert, yet it is insufficient for the relevant issues. An opinion of whether an attempted manipulation occurred in the market is dependent on, among other things, a learned analysis of the trading data. In this matter, Moncada's actual trading and its effect in the market is the most telling evidence regarding whether he attempted to manipulate the market. Wollack has admitted he has never analyzed trading data before and, most significantly, he did not analyze the relevant trading data in this case. (Wollack Dep. 16:5-13, 18:3-10, 28:9-12, 28:16-30:4, 30:10- 31:21, 119:21- 120:8, 121:12-15, 129:14-17). In addition to having failed to perform even a rudimentary trading analysis, Wollack possess no other experience that would make him qualified. (Wollack Report p. 1). For example, he admits that he hasn't published any articles on any commodities related subject, let alone market manipulation. *Id.* Further, his report is bereft of any other relevant or academic information (e.g. lectures, academic courses taken or taught, presentations made in the

7

industry) that would indicate that he is remotely qualified to render an opinion regarding the issues in this case.  *Id.*

Wollack's experience is lacking because he has not demonstrated that he possesses any knowledge or experience in analyzing or reviewing commodity futures trading data relating to a market manipulation.  (Wollack Dep. 16:5-13, 18:3-10, 28:9-12, 28:16-30:4, 30:10- 31:21, 119:21- 120:8, 121:12-15, 129:14-17).  Absent some experience analyzing commodity futures trading data, Wollack is not an expert able to assist the trier of fact on the relevant issue of whether Moncada attempted to manipulate the December 2009 Wheat Futures Contract or whether Moncada's trading methods could have impacted or effected the market, he is simply another commodity futures trader with an uninformed opinion.

Wollack's years of trading experience alone, without any specialized analytical knowledge of the relevant commodity futures trading data, cannot reliably inform the Court about issues relevant to whether Moncada attempted to manipulate the December 2009 Wheat Futures Contract. See, e.g., *In re Blech Secs. Litig.,* 94 Civ. 7696 (RWS), 2003 WL 1610775 at *22 (S.D.N.Y. Mar. 26, 2003) (proposed expert that lacked specialized knowledge about relevant securities issues in the case was not qualified to offer expert testimony).  As it is vital that this Court not be deceived by the assertions of an expert who can only offer limited credentials and no trade data analysis, Wollack should be found unqualified to render expert opinions to this Court and his report stricken from the record. *Askin*, 130 F.Supp.2d at 529.

### C.    The Wollack Report Offers Unreliable Statements

Wollack utilized no methodology in reaching his conclusions.  In fact, Wollack only "eyeballed" a fraction of the trading data made available to him, and failed to perform any analysis on the trade data.  (Wollack Dep. 119:21-120:8, 121: 12-15).  The Wollack Report's

statements and conclusions as to the market impact[4] and volatility of Moncada's large-lot spoof orders, therefore, are completely unreliable.  Further, Wollack's Report makes numerous unsupported statements regarding what unknown traders would think about Moncada's trading and what Moncada's motivations may have been for his trading that have no basis and are unreliable.

### 1.    The Wollack Report Has No Methodology

The Wollack Report includes various statements purporting to show that Moncada's large-lot spoof orders did not impact the price of the December 2009 Wheat Futures Contract. Specifically, the Wollack Report includes various statements about price movements and market volatility after some of Moncada's large-lot orders were placed in the market.  The Wollack report is unreliable for several reasons.  First, despite having access to all the data that the CFTC's expert relied on, Wollack only reviewed a limited amount of trading data.  Second, the data that he did look at, he only "eyeballed" and performed no analysis.  Third, Wollack cherry picked some examples from the data and then opined as to the entire set of data.

First, Wollack was retained as Moncada's expert in June 2013 and submitted the Wollack Report on September 30, 2013. (Wollack Dep. 52:14-15; see Dkt #34)  During that period, Wollack had access to all trade data, produced to Defendant by the CFTC[5], for the *entire*

---

[4] As a clarification, the CFTC does not need to prove that Moncada's large-lot spoof orders actually impacted the market price to prevail on its charges of attempted manipulation against Moncada.  *See Parnon Energy, Inc*., 875 F.Supp.2d at 250 (elements of attempted manipulation violation are intent to manipulate and overt act in furtherance of that intent).  The CFTC need only show that Moncada intended to manipulate the market price.  The CFTC has alleged Moncada's orders had actual market impact as it can be a strong indicator that Moncada intended to manipulate the market price.  However, the CFTC need not show that every, or any, large-lot spoof order actually impacted the market price.

[5] The Wollack Report uses the term "CFTC Data" in reference to the entire amount of trading data produced to Defendant by the CFTC (Wollack Report p. 2; Wollack Dep. 58:16- 64:5).

December 2009 Wheat Futures Contract market from August 13, 2009 to November 30, 2009,
which included all the trading data reviewed by the CFTC's expert.  (Wollack Dep. 81:19-83:2).
Wollack testified that he received a hard drive from Moncada's counsel, presumably with copies
of all data produced by the CFTC.  (Wollack Dep. 63:6-65:11).  However, Wollack stated that he
did not review all of the data he received because the spreadsheets of data were "beyond the
spreadsheet capability of my Excel."  (Wollack Dep. 75:19-76:2).  Rather than review trading
data that included all traders in the December 2009 Wheat Futures Contract market for the
alleged attempted manipulation dates, Wollack filtered the trading data so as to only review
Moncada's trading activity.  Moreover, Wollack only reviewed trade data for just five of the
eight attempted manipulation dates. (Wollack Dep. 18:3-10, 62:8-64:2; Wollack Report p. 2).
Additionally, Wollack testified he also received some daily account statements from the
Defendant for both the master and sub trading accounts Moncada traded, but these were
incomplete and represented only some of the alleged attempted manipulation dates – yet he
relied on them for his report.  (Wollack Dep. 79:3-83:2).

Second, Wollack admitted he only "eye-balled" a limited portion of trade data and
performed no analysis.  (Wollack Report pp. 3, 4, 9-11, 12; Wollack Dep. 18:3-10, 62:8-
64:2,106:9-14, 120:1-8, 121:3-15, 122: 10-15, 133:21-134:9).   Each of the eight days of trade
data consists of approximately one million lines of data, and Wollack chose to simply "eye-ball"
some of that data, from only five of the eight days, to see if those large-lot orders impacted
market price or volatility.  (Wollack Dep. 18:3-10, 62:8-64:2, 121:3-15).  When the Wollack
Report states that Wollack found "there is no evidence" of price impact, perhaps the reason is
because he was not looking too hard for evidence when he only "eye-balled" limited trade data.

10

Further, during testimony, Wollack stated that he has never conducted any analysis of the trade data. (Wollack Dep. 128:12-129:17). Specifically relating to the case at bar, Wollack testified: 1) he did not analyze the trade data to determine if other traders were reacting to Moncada's large-lot orders and cancellations (i.e. spoofs) (Wollack Dep. 129:14-17); 2) he did not conduct a survey of market traders to determine if any of them would adjust their trading and ignore frequent cancellations like Moncada's, though he asserted they would (Wollack Dep. 130:13-19, 128:12-19); 3) he did not conduct any analysis of trade data during the periods Moncada was *not* placing large-lot orders to determine what the regular average price movement was in the CBOT Wheat Futures market (Wollack Dep. 121:3-15); and 4) he did not analyze trade data to determine how often *after* the 710 times Moncada placed large-lot orders the price *did* move in the same direction as his large-lot orders. (Wollack Dep. 122:10-15). In essence, Wollack acknowledged he did not calculate any baseline to determine any possible market price movement, did not use any baseline calculation to compare to the actual price movement created by Moncada or volatility happening around Moncada's large-lot orders, yet still reached the conclusion that Moncada's large-lot orders did not impact market prices. It is unreliable to make an assertion regarding price movement in any commodity futures market without performing the basic analysis necessary to support that assertion. Considering the very limited amount of data that Wollack actually reviewed, his methodology (or lack thereof) when reviewing the data renders any opinion unreliable. Even if Wollack had attempted to analyze the trade data, he lacked any experience that would qualify him to do so. (Wollack Dep. 16:5-13, 106:9-107:19).

Third, Wollack cherry picked certain examples using no trade data analysis and then uses this limited information to make grandiose and unsupportable arguments. For instance, the Wollack Report states that "there is no evidence that [Moncada's] large orders caused any erratic

11

price movements in the December wheat contract that basically moved in one tick increments while his large orders were pending." (Wollack Report pp.3, 4, 9-11). Additionally, the Wollack Report asserts, based on looking at only two orders out of a total of 107 large-lot orders that Moncada placed on October 26, 2009, that the entering of large sell orders does not necessarily result in lower prices. (Wollack Report p. 6; *See also* Bessembinder Report, Table 1 for total number of large-lot orders). Other such statements in the Wollack Report supposedly finding no market impact include Wollack's examples of looking at only one large-lot order on October 12, 2009 (out of 71 large-lot orders that Moncada placed that day) and of looking at only four large-lot orders on October 6 (out of 46 large-lot orders that Moncada placed on that day). (Wollack Report p. 8; *See* Bessembinder Report, Table 1 for total number of large-lot orders). Yet none of these assertions in the Wollack Report are supported in any manner by trade data analysis that would be necessary to determine market price movements and is therefore unreliable.

Interestingly, the premise asserted by the Wollack Report that because a *select few* large-lot orders Wollack looked at did *not* have an effect on the market price (a conclusion ascertained without any trading analysis) that, therefore, *all* of Moncada's large-lot orders must have had no effect on the market price, is contradicted by the Wollack Report itself. The Wollack Report actually concedes that some of Moncada's large-lot orders had at least some price effect in one example where Moncada sold contracts "one or two ticks better than the price" of his large-lot buy orders. (Wollack Report p. 6). The Wollack Report also concedes that some of Moncada's large-lot orders had "little" effect on the market price, wherein he defines this as "possibly one tick better" in the market. (Wollack Dep. 131:9-132:16, Wollack Report p. 6). Ironically, even without conducting an appropriate and rigorous trade data analysis that would be necessary to

12

justify any conclusions on market impact, the Wollack Report still found Moncada did have

some market impact – while also concluding at the same time he did not.  Further, in stating

there was "little" effect on the market price the Wollack Report attempts to diminish the *amount*

of market impact Moncada created, which is inconsequential since the fact that there was *any*

market impact is a strong indicator of Moncada's intent to manipulate the market.

     When determining whether an expert's opinions are reliable, the Court's focus must be

on the expert's principles and methodology, not on the conclusions.  *SEC v Badian*, 822

F.Supp.2d 352, 357 (S.D.N.Y. 2011) (citing *General Electric Co. v Joiner*, 522 U.S. 136, 146

(1997)).  Because Wollack simply "eye-balled" a limited amount of trading data while cherry-

picking a few trades to emphasize does not amount to expert methodology, his conclusions

regarding market impact and volatility are unreliable and inadmissible.  Moncada placed and

canceled over 700 large-lot orders on the eight attempted manipulation dates.  *See generally,*

Dkt. No. 1.  "Eyeballing" some trade data for only a few of those 700-plus large-lot orders

provides no basis for broader conclusions about the impact those orders had on the market.[6]  *See*

*Pepsi Cola Co.,* 650 at 319-20 (expert report was excluded as unreliable because it did not cite to

any analysis, studies or facts to confirm his methodology).  The lack of any methodology makes

Wollack's unsupported opinions unreliable and inadmissible.  See e.g., *Algarin v. N.Y.C. Dep't*

---

[6] By comparison, the CFTC's expert, Dr. Bessembinder, conducted extensive statistical analysis
of all trade data for all traders on the eight attempted manipulation dates.  Dr. Bessembinder
evaluated the average price impact of all 700-plus large-lot orders that Moncada placed on the
eight attempted manipulation dates, the volatility following those large-lot orders, and
Moncada's trading in the minutes following his large-lot orders.  (*See generally*, Bessembinder
Report, Dkt. 54-34).  When asked about his method of review of the data, Dr. Bessembinder
replied "the whole point of using a state-of-the-art statistical model is that you don't fall into the
million traps that can be involved in trying to eyeball data, that you use all the data, you let the
data speak, you let it speak in a scientifically valid manner.  So no, I didn't eyeball it.  I used
scientifically valid methods."  (Deposition of Hendrik Bessembinder 98:3-9).

*of Correction*, 460 F.Supp.2d 469, 477 (S.D.N.Y. 2006) (impressive and extensive experience

does not equate to methodology); *Askin*, 130 F.Supp.2d at 529 (excluding expert on broker-

dealers because testimony lacked a reliable methodology).

      The Wollack Report is completely unreliable because it devotes considerable attention to

only a few of Moncada's over 700 large-lot orders, looking at only five of the eight attempted

manipulation dates, but it fails to support its conclusions with any trading analysis beyond just a

cursory "eyeballed" assessment of only a selected amount of trade data.  *See generally,* Wollack

Report p. 5-9.  Moreover, Wollack opined that Moncada's trading had "no effect on the

volatility" in the market after the placement of those large-lot orders, yet did nothing to

determine volatility.  *See generally,* Wollack Report p. 9-11

### 2. The Wollack Report has Unreliable Statements Regarding Moncada's Trading Motivations

      The Wollack Report offers extensive musings as to Moncada's motivations, another

unreliable set of statements without any basis.  The Wollack Report includes numerous

statements about Moncada's trading style and mindset while trading in October 2009, such as

"[i]f Moncada was trading for the moment then he would want…" and "to Moncada time is more

of the essence[.]"[7]  (Wollack Report p. 4).  The Wollack Report also includes statements about

Moncada's intent when placing particular large-lot orders, such as "[i]f he did not intend to be

executed he would have sold …", "[c]learly Moncada intended to be executed…", and "he

obviously was not trying to induce selling as he must have thought…"  (*Id.* at 5, 6).  Each

mention of Moncada's trading in the Wollack Report includes some statement as to what

---

[7] This memorandum provides only a few examples of unreliable statements presented in the Wollack Report, although the report contains many other statements inadmissible for the same reasons.

Moncada "obviously" or "clearly" was intending to do, but without any trading data analysis, interviews, research, or information from Moncada as support. (Wollack Report p. 4-8; Wollack Dep. 105:19- 106:8).

The Wollack Report cannot provide support for Wollack's opinions regarding Moncada's motivations or intentions by Wollack's conversations with Moncada or by his review of Moncada's deposition. (Wollack Dep. 105:19- 106:8). Wollack stated that he only "spoke briefly with Moncada" in preparation of drafting his report, but did not ask him whether he intended to fill his October 2009 large-lot orders. (Wollack Report p. 1; Wollack Dep. 103:15- 104:15).[8] Significantly, Wollack did not ask Moncada whether he intended to fill his large-lot orders, in fact, Wollack did not talk to Moncada about *any* specific large-lot orders or trades. (Wollack Dep. 101:23-102:4, 103:23-104:1, 105:19-22). Additionally, while Wollack testified that he "assumed" he reviewed a copy of Moncada's deposition in this matter, he specifically stated he did not rely upon it in preparing the Wollack Report. (Wollack Dep. 91:2- 94:11).

For instance, Wollack insists that one reason Moncada placed his large-lot orders was to "test the strength of the market." (Wollack Report p. 3). However, when asked during testimony about the basis of this assertion Wollack stated, "Quite honestly, I don't recall if he told me that or not." (Wollack Dep. 124:16-19).

Wollack has absolutely no basis for his supposed insight into Moncada's motivations or intentions. In fact, when explaining why he didn't have to ask Moncada whether he intended to fill his large-lot orders Wollack stated, "of course [Moncada] intended to be executed in large orders, otherwise he would have pled guilty and the case would be over." (Wollack Dep. 108:7-

---

[8] Notably, Moncada repeatedly testified that he did not recall why he placed any particular large-lot order. *See generally,* Summary Judgment Memo, at 11-12 (Dkt. No. 53).

20).  Apparently, Wollack believes that every person who violates the law readily admits it and accepts responsibility for their violations.  The Wollack Report started with the assumption that Moncada did not intend to manipulate the market, neither sought or provided any support for that assumption – and came to the conclusion that Moncada did not intend to manipulate the market.  Aside from being convenient circular reasoning, the Wollack Report's statements on Moncada's intentions are unreliable and should be stricken.

Again, an expert opinion, such as the Wollack Report, rendered without any analysis, studies, or facts to support those opinions does not meet the reliability threshold for admissibility.  *See Pepsi Cola Co*., 650 F.Supp.2d at 319-20 (expert report excluded because it did not cite to any analysis, studies or facts to confirm his methodology); *Askin,* 130 F.Supp.2d at 530 (expert testimony excluded when the statements were mere conclusions by the expert unsupported by research, studies, or other generally accepted support for expert testimony).

### 3.     The Wollack Report has Unreliable Statements Regarding Other Traders in the Market

The Wollack Report is also replete with unsupported statements regarding what traders would think or how they would react to certain events in the market.  For instance, the Wollack Report states that "[t]raders who want to manipulate markets or violate trading rules do so with the intent to avoid risk and generally do not take risk greater than potential profit."  (Wollack Report p. 2).  The Wollack Report also states that "[s]ometimes large orders may be used to test the strength of a trader's position or direction of the market."  (*Id.* at 3).  The Wollack Report also states that "traders would notice, adjust their trading accordingly and ignore frequent cancellations."  (*Id.* at 4).  However, the Wollack Report offers no support for any of these or any of its other statements on how other traders would react.

16

Wollack did not base his conclusions on any survey of traders or any published materials to provide him a broad understanding.  (Wollack Dep. 130:13-131:5, Wollack Report p. 1-2).  Instead, he based his opinion on how traders would react solely on his own personal experience as a trader.  (Wollack Dep. 130:13-131:5).  At best, Wollack could only provide an opinion on how he, hypothetically, as one occasional trader out of countless traders in the market, would react.

The Wollack Report also includes unsupported statements comparing Moncada's trading style to other traders, such as "[f]or traders like Moncada there is no upside," and "Moncada's aggressive style especially when compared to other traders[.]"  (Wollack Report p. 2-4).  The Wollack Report offers no basis for these purported comparisons between Moncada and other traders' trading styles since Wollack 1) doesn't remember consulting with Moncada about his trading style, and 2) never studied or surveyed any other trader.  (Wollack Dep. 97: 18- 100:9, 104:2-105:6, 130:13-131:5).  Moreover, Wollack admitted that he never reviewed trade data to determine what trading styles other traders in the December 2009 Wheat Futures Contract market used.  (Wollack Dep. 109:1-7).  Without doing anything to evaluate either Moncada's trading style or the trading styles of other traders in the December 2009 Wheat Futures Contract market, Wollack provides no support for his statements regarding Moncada's trading style and his statements comparing Moncada to other traders.

While Wollack may claim that his conclusions are based on his decades of trading experience, he did not provide sufficient support to say his experience leads to his conclusions.  Wollack is the quintessential expert who "offer[s] credentials rather than analysis."  *Askin*, 130 F.Supp.2d at 529.  Wollack would like this Court to allow and consider his opinions simply because he says so.  However, opinion evidence that is only connected to the existing data by

"the *ipse dixit* of the expert" does not render it reliable and admissible. *Askin et al.* 130 F.Supp.2d at 530 (S.D.N.Y. March 1, 2001), (citing *Kumho*, 526 U.S. at 157). Without any explanation of how his experience – or anything – would support his opinions regarding the thoughts and actions of other traders or Moncada's trading style, the Wollack Report's unsupported statements should be struck as unreliable.

### D. The Wollack Report Offers Irrelevant Statements Regarding "Risk" That Do Not Aid the Trier of Fact

In addition to Wollack being unqualified and the Wollack Report being unreliable, the Wollack Report also is replete with irrelevant statements regarding "risk" in the market.

The Wollack Report ignores decades of commodity futures trading market manipulation case law by stating that "[w]hat is important is whether the trader was taking market risk[.]" (Wollack Report p. 11). In effect, the Wollack Report asserts that a trader cannot intend to manipulate the market price if the trader is taking on market "risk" (i.e. a risk that his orders will be filled). This assertion is unsupported and untrue.[9] The Wollack Report's statements regarding "risk" are irrelevant to any discussion of attempted manipulation. Whether a trader is at risk is not an element of either manipulation or attempted manipulation. *See, e.g., Parnon Energy, Inc.*, 875 F.Supp.2d at 244, 250 (setting out four elements of perfected manipulation and two elements of attempted manipulation).

On the contrary, even ordinarily legitimate trading activity can be an overt act for purposes of an attempted manipulation charge. *See In re Amaranth Natural Gas Commodities Litigation.*, 587 F.Supp.2d 513, 535 (S.D.N.Y. 2008) ("[T]he combination of wrongful intent (or,

---

[9] In fact, the CFTC agreed to a stipulation in the Pre-Trial Order, filed January 27, 2014, that the placing and cancelling of Moncada's orders put his orders at risk of being filled (Dkt. # 51, ¶ 81). Though this is true, it is irrelevant to the issues before the Court.

more accurately, the lack of a legitimate economic motive) and a legitimate transaction would constitute manipulation.").  Many manipulation and attempted manipulation cases involved traders who possessed large positions in the market and were thus exposed to considerable risk. *See, e.g. DiPlacido v. CFTC*, 364 Fed.Appx. 657, 661 (2d Cir. 2009), *cert. denied* 130 S.Ct. 1883 (2010) (affirming CFTC administrative decision finding manipulation and attempted manipulation against trader for "violating bids and offers", or paying more than the best market price, with the intent to manipulate the closing price); *Gracey v. JP Morgan Chase & Co. (In re Amaranth)*, 730 F.3d 170, 183-84 (2d Cir. 2013) (discussing alleged manipulative scheme involving holding large open position in the market and "slamming the close" by executing numerous trades immediately before the market close with the intent to manipulate the closing price); *Parnon Energy*, 875 F.Supp.2d at 239-240 (denying motion to dismiss claims of perfected and attempted manipulation based on allegations that defendants sold large physical crude oil position at a loss to benefit futures position); *CFTC v. Enron Corp.*, Civ. No. H-03-909, 2004 U.S. Dist. LEXIS 28794, at *5-6 (S.D. Tex. Mar. 4, 2004) (denying motion to dismiss manipulation and attempted manipulation claims based on defendant making large trades in spot natural gas market with the intent to manipulate the related futures market).

In each of these cases the defendant(s) were exposed to market risk, but it was irrelevant to the charges of manipulation or attempted manipulation.  In fact, the very positions that placed these defendants at risk were most often the 'overt acts' in furtherance of their manipulative scheme.  Similarly, Moncada's large-lot spoof orders that were at risk in the December 2009 Wheat Futures Contract market would be considered some of the overt acts of his manipulative scheme should the CFTC prevail in its action.

The Wollack Report's central thesis on "risk" runs directly counter to case law.  Though Moncada was at risk of having his large-lot spoof orders filled, that risk allowed him to attempt to benefit from price movements caused by his large-lot spoof orders when he placed smaller-lot orders on the opposite side of the market.  Moncada's risk is similar to those market risks carried by other traders who have been found to have manipulated or attempted to manipulate the market through otherwise legitimate trading activity.  *See, e.g., DiPlacido*, 364 Fed.Appx. at 661.  The Wollack Report's statements regarding risk should be struck as irrelevant.

### E.      The Wollack Report Offers Inadmissible Legal Conclusions

The ultimate question in the present case is whether Moncada attempted to manipulate the price of the December 2009 Wheat Futures Contract.  Peppered throughout the Wollack Report are legal conclusions on this ultimate question disguised as expert testimony.  The central thesis of the Wollack Report is that "[t]he entry of more large cancelled orders than other market participants does not, in and of itself, prove intent to manipulate the market.  What is important is whether the trader was taking market risk[.]"  (Wollack Report p. 11).  The Wollack Report avers that "frequent cancelling of orders is not a rule violation nor does it indicate intent to manipulate the market."  (Wollack Report p. 4).  The Wollack Report also declares Moncada's action did "…not inten[d] to manipulate", also declares "[t]his is not manipulating the market when the market didn't move", that certain trading activity "is not manipulation with the intent to push the market higher", and that it is Wollack's "opinion that Moncada's trading style did not manipulate the market."  (Wollack Report p. 2, 7, 8).  Not only are these statements inadmissible legal conclusions, but they are offered with absolutely no support.

Wollack, who lists as one of his expert "qualifications" that he is a licensed attorney, is submitting legal arguments in the guise of expert testimony, even though he testified that he did

not intend to offer any legal opinions or interpret the law for the Court.  (Wollack Report p. 1;

Wollack Dep. 13:13-23).  These statements are "testimony stating ultimate legal conclusions"

and therefore inadmissible.  *Highland Capital*, 551 F.Supp.2d at 182-83; *see also, Badian*, 822

F.Supp.2d at 357; *Bilzerian*, 926 F.2d at 1294; *Scop*, 846 F.2d at 140; *Marx & Co.*, 550 F.2d at

510-11; *DiBella*, 403 F.3d at 121.

> **F.      The Wollack Report Offers Only Inadmissible Narratives When Stripped of
> its Unreliable Statements, Irrelevant Statements, and Legal Conclusions**

The CFTC is attaching a copy of the Wollack Report highlighting the text showing which

statements are unreliable and irrelevant or inadmissible legal conclusions. (*See* Attachment A,

Highlighted Wollack Report ("Attach. A")).  Once these statements and conclusions are removed

from the Wollack Report, only mere narrative remains.  (*See generally,* Attach. A).  In particular,

the Wollack Report provides examples of Moncada's large-lot orders and related trading activity,

albeit examples that conveniently gloss over much of the detail, that are already stipulated to in

the Joint Pretrial Order.  *Id.;* Dkt. # 51, VIII.B(11).   Simple narratives of facts are "lay matters

which the trier of fact is capable of understanding and deciding without the expert's help."

*Marvel*, 777 F.Supp.2d, at 729 (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705,

708 (2d Cir. 1989)).  Moreover, "an expert cannot be presented to the jury solely for the purpose

of constructing a factual narrative based upon record evidence."  *Highland Capital Mgmt. L.P. v*

*Schneider,* 379 F.Supp.2d 461, 469 (citing cases).  Therefore, the remaining narrative portions of

the Wollack Report, and in particular the Wollack Report's trading examples on pages five

through eleven, are rendered inadmissible after the unreliable and irrelevant statements, and

inadmissible legal conclusions are removed.  Therefore, the remaining narrative portions should

also be stricken.  (Wollack Report p. 2-11).

## IV.     CONCLUSION

Wollack is unqualified to render any expert opinions relevant to the case at bar. However, should this Court find that Wollack is qualified as an expert, the Wollack Report, as depicted in a highlighted version (Attachment A), when stripped of its unreliable and unsupported statements about market volatility and price movement without any underlying analysis, its unreliable musings regarding Moncada's trading motivations and what traders think and how traders would react to Moncada's actions, its irrelevant statements regarding "risk," and its inadmissible legal conclusions, is simply a narrative that provide no assistance to the trier of fact. *See* Attach. A.  As such, for the reasons stated above, the CFTC respectfully requests this Court find Defendant's Expert Report of Steven Wollack inadmissible under Federal Rules of Evidence 401, 402, and 702, and strike it from the record.

Dated: March 12, 2014                                      Respectfully Submitted,

*/s/* Jennifer S. Diamond

Jennifer S. Diamond (Illinois Bar No. 6278482)
Richard Glaser (Member, New York State Bar
   and U.S. District Court for the Southern
   District of New York Bar No. RG8652)
Kenneth W. McCracken (Missouri Bar No.
   44049)
Andrew Ridenour (D.C. Bar No. 501628)
U.S. Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
Tel:  (202) 418-5244 (Diamond)
Tel:  (202) 418-5358 (Glaser)
Tel:  (202) 418-5348 (McCracken)
Tel:  (202) 418-5438 (Ridenour)
Fax:  (202) 418-5937
jdiamond@cftc.gov
rglaser@cftc.gov
kmccracken@cftc.gov
aridenour@cftc.gov