UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES COMMODITY FUTURES TRADING COMMISSION,**<br>            **Plaintiff,**<br><br>              v.<br><br>**ERIC MONCADA; BES CAPITAL LLC; and SERDIKA LLC.**<br>            **Defendant(s).** | Civil Action No. <u>12-cv-8791 (CM)</u><br><u>(GWG)</u> |

**PLAINTIFF'S MEMORANDUM IN REPLY
TO DEFENDANT'S MEMORANDUM IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

1

**Table of Contents**

I.   Summary ............................................................................................................... 1

II.  Summary Judgment Is Appropriate Where Intent is Issue but Non-Movant Offers No
     Support ................................................................................................................. 2

III. All Relevant Facts that Support Moncada's Intent to Manipulate Are Undisputed............. 3

   A.  Moncada's Opposition Memorandum Has Provided No Reliable Evidence to Rebut the
       Commission's Allegations............................................................................... 4

   B.  Moncada's Opposition Memorandum Attempts to Downplay Facts that Illustrate his
       Manipulative Intent........................................................................................ 6

   C.  Moncada's Opposition Memorandum Cannot Cast Doubt on the Commission's Proof . 7

IV.  All relevant Facts that support Moncada Engaged in Fictitious Sales and Entered Non-
     Competitive Transactions are undisputed ........................................................... 8

V.   Conclusion........................................................................................................... 10

# Table of Authorities

**Cases**

*Amaranth Nat. Gas Commod. Lit.*, 587 F.Supp.2d 513 (S.D.N.Y. 2008) ...................................... 4

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ..................................................................... 3, 6

*Butler v. Raytel Med. Corp.*, 150 Fed.Appx. 44 (2d Cir. 2005)...................................................... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 3

*CFTC v. Parnon Energy Inc.*, 875 F.Supp.2d 233 (S.D.N.Y. 2012) .............................................. 4

*Dister v. Cont'l Group, Inc.,* 859 F.2d 1108 (2d Cir. 1998) ........................................................... 3

*Harold Collins* [1986-1987 Transfer Binder] Comm. Fut. L. Rep. at ¶ 31,900-901 ...................... 9

*In re Energy Transfer Partn. Nat. Gas Litig.*, 2009 U.S. Dist. Lexis 75859 (S.D. Tex., Aug. 26, 2009) ........................................................................................................................................ 4

*In re Three Eight Corporation*, [1992-1994 Transfer Binder] Comm. Fut. L. Rep. ¶ 25,749 (CFTC Jun. 16, 1993) .............................................................................................................. 9

*In re Indiana Farm Bureau* [1982-1984 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,796 (CFTC Dec. 17, 1982) ............................................................................................................. 4

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573 (2010)....................... 10

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) .............................................................................. 4

*Meiri v. Dacon,* 759 F.2d 989 (2d Cir. 1985) ............................................................................ 3, 6

*Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969) .................................. 6

*Reddy v. CFTC*, 191 F.3d 109 (2nd Cir. 1999) .............................................................................. 9

*Scotto v. Almenas*, 143 F.3d 105 (2nd Cir. 1998) .......................................................................... 3

*Stoller v. CFTC*, 834 F.2d 262 (2d Cir. 1987) ............................................................................... 9

*Wilson v. CFTC*, 322 F.3d 555 (8th Cir. 2003)............................................................................... 9

Plaintiff U.S. Commodity Futures Trading Commission ("Commission" or "CFTC") submits this Memorandum in Reply ("Reply Memo") to Defendant Eric Moncada's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Opp. Memo") (Dkt. No. 63) and Defendant's Response to Plaintiff's Statement Pursuant to Local Rule 56.1 and Defendant's Statement of Disputed Facts ("Def. 56.1 Stmt.") (Dkt. No. 64). The Commission refers the Court to its Memorandum in Support of Plaintiff's Motion for Summary Judgment Against Defendant Eric Moncada ("MSJ Memo") (Dkt. No. 53) and attached materials.

## I. SUMMARY

The present case is ripe for summary judgment. Defendant Eric Moncada ("Moncada") has admitted all of the relevant undisputed facts regarding the attempted manipulation, fictitious sales, and non-competitive trades violations. (See Def. 56.1 Stmt. ¶¶ 1-81). The only question is what inferences can be reasonably drawn from those facts.

The Commission has presented a case firmly planted in those undisputed facts: namely, that Moncada intended to manipulate the market price of the December 2009 contract for CBOT #2 Soft Red Winter Wheat futures (the "December 2009 Wheat Futures Contract") by placing 710 orders for 200 or more lots of December 2009 Wheat Futures Contracts ("large-lot orders") on the eight attempted manipulation dates; immediately canceling 99.6 percent of the volume of his large-lot orders in an attempt to impact the market price; and placing smaller orders on the opposite side of the market to take advantage of that price impact. Moncada has admitted to the underlying analysis of the CFTC's expert regarding Moncada's trading, which concluded that Moncada's large-lot orders impacted market price. The low rate at which Moncada's large-lot orders filled, coupled with the impact that those large-lot orders had on the market, strongly indicate Moncada's manipulative intent. Moncada placed these large-lot orders at or near the

best bid or best offer price (making the low rate at which these orders executed even more unusual), while ensuring that other traders saw the full size of the order by not using iceberg orders. (MSJ Memo 9, 11, 26). Additionally, Moncada's conversation with his trading colleague who witnessed Moncada's prior spoofing further underscores Moncada's manipulative intent in the market. (MSJ Memo p. 15-16, Plaintiff's Rule 56.1 Statement, Dkt. No. 55, ¶¶ 67-70).

Moncada offers no concrete evidence to support his theory of his intent, as presented by his three purported rationale for his trading conduct. Moncada testified that he could recall why he placed any individual large-lot orders and his self-serving statements regarding the three potential rationales for his possible motivations for his trading on the charged dates conflict with the actual trade data. (MSJ Memo, 30-39). The only support Moncada provides for his potential rationale is a woefully inadequate "expert" report, which the Commission has moved to strike. Moncada argues that he "only rarely took advantage" of price movements by his trading on the opposite side of the market in the 20 seconds following his spoofs, as if having only "a little" manipulative intent would render him not liable. (See Opp. Memo 30).

The Commission has presented a substantiated argument as described in the MSJ Memo and Moncada has admitted to all relevant facts supporting that argument. Moncada has offered no concrete evidence to create a genuine issue of material fact. Therefore, since the inferences that can be reasonably drawn from these facts support only that Moncada is liable, the Court should grant the Commission's Motion for Summary Judgment on all counts. (Dkt. 52).

## II.   SUMMARY JUDGMENT IS APPROPRIATE WHERE INTENT IS ISSUE BUT NON-MOVANT OFFERS NO SUPPORT

The Second Circuit has held that although "summary judgment should be used sparingly" in cases where the material fact at issue is a party's intent or motivation, the non-movant must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply

because the determinative issue focuses upon the [non-movant's] state of mind." *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1998). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985).

A nonmovant "must support with specific evidence his assertion that a genuine dispute as to material fact does exist[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation[.]" *Scotto v. Almenas*, 143 F.3d 105, 114 (2nd Cir. 1998). A nonmovant's showing of a genuine dispute must be grounded in "concrete evidence" sufficient to support a reasonable jury's rendering a verdict in his favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 256 (1986) ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient.").

### III. ALL RELEVANT FACTS THAT SUPPORT MONCADA'S INTENT TO MANIPULATE ARE UNDISPUTED

Moncada admitted all of the relevant facts that the Commission has used to support its allegations of attempted manipulation. (Def. 56.1 Stmt. ¶¶ 1-21, 23-45, 48, 50-51, 56-81). This includes all facts regarding Moncada's large-lot orders and the impact of those large-lot orders on the market price, and Moncada's actual placing orders on the opposite side of the market in an attempt to benefit from the impact of those large-lot orders.

Moncada's arguments show a fundamental misunderstanding of the law regarding the proof of intent necessary to find him liable for attempted manipulation and fictitious trading. Moncada's own brief admits his manipulative intent by stating that he "only rarely took advantage of the effect on market price[.]" (Opp. Memo 30). Moncada's admission that he took advantage of the market impact at all, if "only rarely," supports the contention that Moncada

intended to manipulate the December 2009 Wheat Futures Contract. Moncada tries to downplay his admissions by saying that he had "a ***willingness but not necessarily an "intent"*** to have his orders filled in their entirety[.]" (Opp. Memo, p. 26) (emphasis added). Moncada's admission that he entered at least some of those large-lot orders without the intent to fill them, and by extension without any rational economic motive, establishes manipulative intent.[1]

Moncada's few equivocating denials do not create an issue of material fact. Some of the facts that Moncada denies are drawn directly from his own deposition, making his denial untenable. (Def. 56.1 Stmt. ¶ 52). Other facts that Moncada denies are drawn from Dr. Bessembinder's conclusions based on his analysis of Moncada's trading, although Moncada admits to the analysis itself. (Def. 56.1 Stmt. ¶ 45, 49, 53, 55). Moncada's efforts to cast doubt on the Commission's proof are unsuccessful. With all relevant facts admitted, the only question for the Court is what inferences can be reasonably drawn from those facts.

### A.  Moncada's Opposition Memorandum Has Provided No Reliable Evidence to Rebut the Commission's Allegations

While admitting that he "only rarely took advantage" of price movements caused by his spoofing, Moncada tries to hide behind a few self-serving quotes from his deposition and a new

---

[1] As a reminder, and for clarification, the Commission must show that a defendant "acted (or failed to act) with the purpose or conscious object of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand." *CFTC v. Parnon Energy Inc.*, 875 F.Supp.2d 233, 249 (S.D.N.Y. 2012) (quoting *In re Energy Transfer Partn. Nat. Gas Litig.*, 2009 U.S. Dist. Lexis 75859 (S.D. Tex., Aug. 26, 2009)). The Commission can carry its burden of proof on intent by showing "that the alleged manipulator sought, by act or omission, to move the market away from the equilibrium or efficient price… It is enough to present evidence from which it may reasonably be inferred that the accused 'consciously desire[d] that result, whatever the likelihood of that result happening from his conduct.'" *Ind. Farm Bureau* [1982-1984 Transfer Binder] Comm. Fut. L. Rep. (CCH) at ¶ 27,283 (CFTC Dec. 17, 1982). The standard the Commission referenced on page 21 of the MSJ Memo, as set forth in *Amaranth Nat. Gas Commod. Lit.*, 587 F.Supp.2d 513, 531 (S.D.N.Y. 2008) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001), does not apply to CFTC enforcement actions, like this one. *See*, *e.g., Parnon*, 875 F.2d.

affidavit in an attempt to create an issue of fact as to his intent. (Opposition Memo, 9-15, 26). Moncada's only support for these statements, which contradict the undisputed facts established by his own trading, is the "expert" report of Steven Wollack (the "Wollack Report"). (See Opp. Memo 2, 7, 8-10, 12, 15, 26, 28-29, 30). Moncada would like to create a "battle of the experts" to forestall summary judgment. However, as discussed more fully in the Commission's Motion to Strike Expert Report of Steven Wollack (Dkt. No. 66), Wollack is unqualified to act as an expert in this matter, and once unreliable and irrelevant statements and inadmissible legal conclusions are stricken, nothing remains of the Wollack Report. Even if the Court accepts the Wollack Report, Wollack failed to look at or offer any opinion on Moncada's trading on October 14, 19, and 30, 2009, meaning that Moncada has offered nothing to rebut the Commission's case on those three attempted manipulation dates. (Wollack Report, 8).

Moncada's own statements, both in sworn testimony and in his eleventh-hour affidavit[2], provide nothing to show his intent for placing or canceling his large-lot orders on the eight attempted manipulation dates. If, presumably, Moncada actually intended to fill the large-lot orders in question, he would not have given such equivocal answers at his deposition and would have been able to give rationales for his large-lot orders that were actually supported by his trading. (MSJ Memo, 31-39).

---

[2] Moncada's affidavit is an additional attempt to provide a rationale for his use of large-lot orders, following his two-day deposition in July 2013, at which time he had the opportunity to clarify any responses. At his deposition, Moncada knew the CFTC's theory as he had the CFTC's expert report since April 2013. Therefore, any affidavit testimony that goes beyond the exhaustive deposition testimony on Moncada's rationale should be struck as a "sham affidavit" and Moncada should not be allowed to "create" an issue of material fact through such sham affidavits. *See, e.g. Butler v. Raytel Med. Corp.*, 150 Fed.Appx. 44, 45-46 (2d Cir. 2005) (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (affirming summary judgment where district court disregarded affidavit that "supplied information that had been conspicuously omitted during repeated questioning in a deposition.")

Without any "concrete evidence" to rebut the Commission's case, which in contrast is grounded in undisputed facts, Moncada cannot invoke the "talisman" of intent to ward off summary judgment. *See Liberty Lobby*, 477 U.S. at 248, 256; *Meiri*, 759 F.2d at 998.

### B. Moncada's Opposition Memorandum Attempts to Downplay Facts that Illustrate his Manipulative Intent

Moncada attempts to downplay some of the facts that underscore his manipulative intent. For instance, Moncada admits that he rarely used iceberg orders. (Opp. Memo 29). Moncada attempts to downplay this crucial fact by citing the Wollack Report – which itself provides no support – for the proposition that iceberg orders are "not conducive" to Moncada's trading style. (*Id.* at 28-29). Moncada chose not to use a method of trading large-lot orders that would prevent market impact (*i.e.*, icebergs), and has no explanation for his course of action.

Moncada also tries to gloss over the instant message exchange between him and his trading colleague James Moriarty as "sheer fantasy" when in reality, it was Moncada and his friend discussing the very methods Moncada uses just days later in his attempt to manipulate the market. (Opp. Memo, 31; MSJ Memo, 15-16).

Moncada also attempts to limit the Court's focus to Moncada's trading within twenty seconds of a large-lot order. (Opp. Memo, 2, 5, 6, 9, 18-22, 30-31). However, Moncada's trading on the opposite side of the market past twenty seconds of a large-lot order is relevant in evaluating Moncada's intent. First, despite Moncada's after-the-fact explanation, it is unlikely that Moncada would have known in October 2009 exactly how long that impact of his large-lot orders would last. Second, Dr. Bessembinder found that the impact lasted **a minimum of** twenty seconds. (Bessembinder Dep. 40:17-21). Moncada claims that he did not trade on the opposite side of 27 of the 41 large-lot orders provided as examples in the MSJ Memo. However, even limiting such trading to only the first twenty seconds following his spoofs, Moncada admitted

that he traded on the opposite side of 14 of those 41 large-lot orders, which fully comports with the Commission's allegations. (Opp. Memo, 21). Third, the cumulative effect of these large-lot orders – up to 118 on each of the attempted manipulation dates – and Moncada's actual trades on the opposite side of the market in their wake, not any single large-lot order, show Moncada's manipulative scheme. (Bessembinder Report, Table 1; Harris Aff., ¶¶ 20, 24, 26, 34-43).

### C. Moncada's Opposition Memorandum Cannot Cast Doubt on the Commission's Proof

Moncada tries to undercut the Commission's support by criticizing its Expert Report in an attempt to defeat summary judgment. For instance, Moncada's Opposition Memorandum repeatedly claims that Dr. Bessembinder failed to account for modifications of large-lot orders by other traders. (Opp. Memo, 3, 16-17, 27). This is untrue: Dr. Bessembinder calculated that other traders placed a total of 200 large-lot orders, including modifications, on the eight attempted manipulation dates. (Bessembinder Report, Table 6). Moncada's use of large-lot orders is still unusual regardless of whether other traders' modifications are included. Also, rather than being the grand flaw that Moncada presents, Dr. Bessembinder's exclusion of other traders' large-lot order modifications from some of his calculations actually *understates* the differences between Moncada's activity and that of other traders. (Bessembinder Report, n6).

Moncada also attacks an example provided in the MSJ Memo of ten large-lot buy orders in the last fifteen minutes of trading by arguing that "it is conceivable" Moncada was trying to close out a short position, and that the Commission "offers no evidence on this subject." (Opp. Memo, 31). First, Moncada ended that trading day with a net **long** position (as stated in the Commission's papers). (MSJ Memo, 5). Second, the trade data provided with the Harris Affidavit (Attach. L, Dkt. No. 54-16) shows that Moncada executed a net total of 59 lots on the **sell** side in that same 15 minute period, meaning that Moncada was trading net on the opposite

7

side from his large-lot orders.  Thus, this example fully supports the CFTC's case while also showing that Moncada could not have covered the margin required had one of his large-lot orders been filled at the end of the day.

## IV. ALL RELEVANT FACTS THAT SUPPORT MONCADA ENGAGED IN FICTITIOUS SALES AND ENTERED NON-COMPETITIVE TRANSACTIONS ARE UNDISPUTED

Regarding Moncada's Fictitious Sales (Count Nine of the Complaint), Moncada by his own admission engaged in fictitious sales in violation of Section 4c(a).  (Def. 56.1 Stmt. ¶ 71-80).  The parties agree that: 1) there was a purchase and sale, 2) of the same delivery month of the same futures contract, 3) at the same or similar price, and 4) Moncada intended to "close out" open trading positions in one of his trading accounts with offsetting trades placed in the other account, thus satisfying all elements in support of a violation of Section 4c(a) of the Act.  *See* Opp. Memo 35-36; MSJ Memo p. 41-45; *Wilson v. CFTC*, 322 F.3d 555, 559-560 (8th Cir. 2003); *Reddy v. CFTC*, 191 F.3d 109, 119 (2nd Cir. 1999).  Moncada's admissions concede that he placed the offsetting orders to avoid bona fide transactions in the market.

Intent can be inferred "from the intentional structuring of a transaction in a manner to achieve the same result as prearrangement."  *In re Three Eight Corporation*, [1992-1994 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,749 at 40,444 n.15 (CFTC Jun. 16, 1993) (citing *Harold Collins* [1986-1987 Transfer Binder] Comm. Fut. L. Rep. (CCH) at 31,900-901). Moncada improperly claims based on *Stoller* that the Commission must prove that Moncada eliminated all market risk as an essential element of a fictitious sales charge.  (Opp. Memo, 36). This misstates the law.  Rather, the commission must show that Moncada intended to negate risk, which he did when he chose to off-set his own trades.  *Id* at 40,444-45.

The fact that the offer and sale were not placed at the same exact time is of no moment. What is important is that Moncada said that he "decided to offset a position in BES against a

8

position in Serdika to 'close out' one of the positions," and "caused [BES or Serdika] to offer to purchase or sell a number of contracts at a price and caused the other entity…to offer to sell or buy at the same price," to meet that goal. (Opp. Memo, 35). Moncada was clear that he "intended …to effect a sale by one of his entities and a purchase by the other at the same price." *Id.* at 36. Moncada eliminated the possibility of a bona fide transaction because he entered his orders to trade opposite each other, thus effecting offsetting transactions that achieved the same result as a prearranged trade between BES and Serdika.

Moncada claims that because, by chance, a few trades from other traders filled some of Moncada's orders, he did not violate Section 4c of the Act. However, the mere coincidence that other orders were placed in the electronic marketplace at the same time does not alter the fact that all the elements of 4c are proven, in particular Moncada intended for his orders to execute against each other, and that the majority of those orders did trade against each other. Even when intent is an element, like the case at bar, a misunderstanding of the law does not rid the party of liability. "Our law is therefore no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 582-83 (2010).

Regarding Moncada's Non-Competitive Transactions (Count Ten of the Complaint), Moncada's Opposition Memorandum failed to address the non-competitive transactions on October 6, 12, 15, and 29, 2009. Additionally, Moncada admitted the undisputed facts that the Commission cited to support its claim of non-competitive transactions. (Def.'s 56.1 Stmt., ¶ 71-80). As such, the Commission has established the necessary elements of non-competitive transactions for October 6, 12, 15, and 29, 2009, and is entitled to summary judgment on Count Ten of the Complaint.

## V. CONCLUSION

The Commission should be entitled to summary judgment on all counts in the Complaint. Moncada has admitted to all relevant undisputed facts. Moncada has provided no "concrete evidence" to create a genuine issue of material fact as to any of the charges. On the attempted manipulation counts, Moncada cannot rebut the Commission's fully supported case or provide any evidence to support his three purported rationales, aside from an unreliable expert report. In the alternative to summary judgment on Counts One through Eight (attempted manipulation), should the Court accept Moncada's "expert report," it does not create a genuine issue of material fact regarding Counts Three, Four, or Eight of the Complaint. Moreover, Moncada's responses to the fictitious sales charges (Count Nine) fail in light of Moncada's admissions as to his intent for placing those offsetting orders, and he fails to address Count Ten. Because Moncada has presented no evidence to rebut the Commission's allegations, he cannot invoke the "talisman" of intent to ward off summary judgment against him. Instead, the only inferences that can be reasonably drawn from those admitted material facts support a finding that Moncada attempted to manipulate the December 2009 Wheat Futures Contract market, entered into fictitious sales, and entered into noncompetitive transactions.

Dated: March 12, 2014  Respectfully Submitted,

                                            */s/* Andrew L. Ridenour

Andrew Ridenour (D.C. Bar No. 501628)
Jennifer S. Diamond (Illinois Bar No. 6278482)
Richard Glaser (Member, New York State Bar and U.S. District Court for the Southern District of New York Bar No. RG8652)
Kenneth W. McCracken (Missouri Bar No. 44049)
U.S. Commodity Futures Trading Commission
1155 21st Street, NW

10

Washington, DC 20581
Tel:  (202) 418-5438 (Ridenour)
Tel:  (202) 418-5244 (Diamond)
Tel:  (202) 418-5358 (Glaser)
Tel:  (202) 418-5348 (McCracken)
Fax:  (202) 418-5937
aridenour@cftc.gov
jdiamond@cftc.gov
rglaser@cftc.gov
kmccracken@cftc.gov