UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                                Plaintiff,                      Civil Action No. 12 CV 8791 (CM)

            -against-

ERIC MONCADA,                       ECF Case
BES CAPITAL LLC, and
SERDIKA LLC,

                              Defendants.

------------------------------------------------------------X

## MEMORANDUM OF DEFENDANT ERIC MONCADA
## IN OPPOSITION TO PLAINTIFF'S MOTION TO
## <u>STRIKE THE EXPERT REPORT OF STEVEN WOLLACK</u>

Litman, Asche & Gioiella, LLP
Attorneys for Defendant Eric Moncada
140 Broadway – 38th Floor
New York, New York  10005

## Table of Contents

Page

**Argument**

Point I

      In Limine Motions to Limit Expert Testimony are Disfavored in Non-Jury Cases . . . . . . 3

Point II

      Mr. Wollack's Opinions Concerning Trading Strategy are Admissible as
Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            The opinions offered in opposition to summary judgment
and to be offered at trial are admissible . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            The cases cited by plaintiff are inapposite . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Table of Authorities

Page

Algarin v. N.Y.C. Dep't. of Correction,
    460 F.Supp.2d 469 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Am. Home Assur. Co. v. Masters' Ships Mgmt. S.A.,
    2005 U.S. Dist. LEXIS 985, 2005 WL 159592 at *1 (S.D.N.Y. 2005) . . . . . . . . . . . . . . 3

Argonaut Ins. Co. v. Samsung Heavy Industries, Co., Ltd.,
    929 F.Supp.2d 159, 168 (N.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Bah v. Nordson Corp.,
    2005 U.S. Dist. LEXIS 15683, 2005 WL 1813023 at *7 (S.D.N.Y. 2005) . . . . . . . . . . . 7

Capitol Records, Inc. v. MP3 Tunes LLC,
    2004 U.S. Dist. LEXIS 11218 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CD-Wantagh, Inc. v. Shell Oil Company,
    2011 U.S. Dist. LEXIS 19717 at *23-24 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . 3

Compania Embotelladora Del Pacifico v. Pepsi Cola Co.,
    650 F.Supp.2d 314 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Daubert v. Merrell Dow Pharm., Inc.,
    509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Davids v. Novartis Pharmaceutical Corporation,
    857 F.Supp.2d 267 (N.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DiBella v. Hopkins,
    403 F.2d 102 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.,
    314 F.3d 48 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Figueroa v. Boston Scientific Corp.,
    254 F.Supp.2d 361, 368 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Highland Capital Mgmt. L.P. v. Schneider,
    551 F.Supp.12d 513 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Blech Secs. Litig.,
    2003 U.S. Dist. LEXIS 4650 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lappe v. Am. Honda Motor Co.,
    857 F.Supp. 222, 228 (N.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lidle v. Cirrus Design Corporation,
    2010 U.S. Dist. LEXIS 67031 at *16-17 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . 7

Marvel Worldwide, Inc. v. Kirby,
    777 F.Supp.2d 720, 729 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Marx & Co. v. Diners' Club, Inc.,
    550 F.2d 505, 511 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

McCullock v. H.B. Fuller Co.,
    61 F.3d 1038, 1044 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

New York v. Solvent Chem. Co.,
    2006 U.S. Dist. LEXIS 65595, 2006 WL 2640647 at *1 (W.D.N.Y. 2006) . . . . . . . . . . . 3

Nimely v. City of New York,
    414 F.3d 381 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Peerless Insurance Company,
    2008 U.S. Dist. LEXIS 112298 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Primavera Familienstifung v. Askin,
    130 F.Supp.2d 450 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SEC v. Badian,
    822 F.Supp.2d 352 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SEC v. Lorin,
    877 F.Supp. 192, 196 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

SEC v. U.S. Environmental Inc.,
    2002 U.S. Dist. LEXIS 19701 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 5-7, 15

United States v. Bilzerian,
    926 F.2d 1285, 1294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Victoria's Secret Stores Grand Management, Inc. V. Sexy Hair Concepts LLC,
    2009 U.S. Dist. LEXIS 30458 at *18 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 3


Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

**MEMORANDUM OF DEFENDANT ERIC MONCADA
IN OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE THE EXPERT REPORT OF STEVEN WOLLACK**

This Memorandum is submitted in opposition to the motion by plaintiff to strike the expert report of Steven Wollack.

Defendant does not intend to offer the entire Wollack report -- which was written by the witness, not counsel -- into evidence. Mr. Wollack will not provide testimony concerning legal conclusions, ultimate issues of fact or the defendant's actual intent. At trial, Mr. Wollack's testimony will be tailored to comply with the rules of evidence. A summary of the opinions to be offered is set forth below and in the attached Declaration of Richard M. Asche in opposition to the motion.

It is ironic that the plaintiff attacks Mr. Wollack's report for <u>inter alia</u> containing ultimate conclusions, when the report of plaintiff's own expert does precisely the same thing. For example, plaintiff's expert, Mr. Bessembinder (Report, p. 2), states:

> 4.    My central conclusion, supported by the analyses described in the following sections, is that on the eight days charged, as well as during the broader time period I examined, Moncada did not enter the large lot orders with the intention that they would generate trades. The evidence instead strongly supports the conclusion that he entered the large lot orders with the intent to alter market conditions in advance of trades in the opposite direction. That is, he intended to and did sell wheat contracts after he entered large buy orders, and he intended to and did purchase wheat contracts after he entered large sell orders.

Were this a jury case, we would cross-move to strike or limit portions of plaintiff's expert report which contain conclusions or are otherwise inadmissible. However, since this is a non-jury case, there is no reason for the court to decide in advance of trial the admissibility of opinion evidence. This can and should be done on a question by question basis.

To the extent that defendant relied on Mr. Wollack's report to buttress defendant's opposition to plaintiff's summary judgment motion, the opinions expressed by Mr. Wollack are well within the realm of permissible expert testimony.

I.

## IN LIMINE MOTIONS TO LIMIT EXPERT
## TESTIMONY ARE DISFAVORED IN NON-JURY CASES

Neither side has demanded a jury trial in this action.  Where the trial will be before a court and not a jury, the need for *in limine* rulings diminish.  In CD-Wantagh, Inc. v. Shell Oil Company, 2011 U.S. Dist. LEXIS 19717 at *23-24 (E.D.N.Y. 2001), the Court noted:

> A district court has broad discretion with respect to the admissibility or exclusion of expert evidence.  McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995).  That the court would be the trier of fact affects both its discretion and its gatekeeping function.  A court has greater flexibility in satisfying its gatekeeping function vis a vis expert testimony where it is the trier of fact given the absence of the need to protect juries from dubious expert evidence...New York v. Solvent Chem. Co., 2006 U.S. Dist. LEXIS 65595, 2006 WL 2640647, at *1 (W.D.N.Y. Sept. 14, 2006) (noting that the "primary purpose of the holdings in *Daubert and Kumho Tire*, which is the protection of juries from "technical evidence of dubious merit…is not a prevailing concern where, as in this case, the court functions as the trier of fact"); Am. Home Assur. Co. v. Masters' Ships Mgmt., S.A., 2005 U.S. Dist. LEXIS 985, 2005 WL 159592, *1 (S.D.N.Y. Jan. 25, 2005) ("As this will be a bench trial, there is no concern with protecting a jury from 'being bamboozled by technical evidence of dubious merit.'"). [Emphasis supplied]

See, also, Victoria's Secret Stores Grand Management, Inc. v. Sexy Hair Concepts, LLC, 2009 U.S. Dist. LEXIS 30458 at *18 (S.D.N.Y. 2009):

> Moreover, where a bench trial is in prospect, resolving Daubert questions at a pretrial stage is generally less efficient than simply hearing the evidence; if SHC's objections are well-taken, the testimony will be disregarded in any event.

To the same effect, see State of New York v. Solvent Chem. Co., 2006 U.S. Dist. LEXIS 65595, 2006 WL 2640647, at *3 (W.D.N.Y. 2006); and Am. Home Assur. Co. v. Masters' Ships Mgmt., S.A., 2005 U.S. Dist. LEXIS 985, 2005 WL 159592, *1 (S.D.N.Y. 2005).

While there are portions of both experts' opinions which cross the boundary between admissible evidence and inadmissible conclusions, we do not intend to offer the entirety of Mr. Wollack's report into evidence, but only those portions which make use of Mr. Wollack's lifelong experience as a trader and which shed light on the motivation and trading strategy of the defendant.

The Court should await trial of this action and should rule upon the propriety of questions and answers as they arise.

II.

## MR. WOLLACK'S OPINIONS CONCERNING
## TRADING STRATEGY ARE ADMISSIBLE AS EVIDENCE

Plaintiff does not dispute that Mr. Wollack is highly qualified and experienced as a trader of commodities or that he is intimately familiar with trading practices of commodities traders.  As set forth in his Report, Mr. Wollack is a director of the CME Group, which owns CBOE, the exchange on which Mr. Moncada traded.  He has been a member of CME since 1977 and has traded his own commodities account since 1977.  He has been chairman of CME's Business Conduct and Floor Practices Committees.  He has been hired as an expert witness by CME clearing firms, traders and customers.  (See report and CV, p. 1).  Unlike plaintiff's expert who has never traded commodities, Mr. Wollack is familiar with the strategies of traders in placing and cancelling orders and with issues relating to risk.  The information and opinions provided by Mr. Wollack are not within the experience of the ordinary layperson.

In SEC v. U.S. Environmental Inc., 2002 U.S. Dist. LEXIS 19701 (S.D.N.Y. 2002), the Court denied a motion in limine and permitted the SEC's expert to testify, inter alia, as to "his opinions regarding the relevance of certain trade patterns and activity."  (Id. at *2).  In denying plaintiff's motion, the Court noted (at *7):

> In securities cases, federal courts have admitted expert testimony to assist the trier of fact in understanding trading patterns, securities industry regulations and complicated terms and concepts inherent in the practice of the securities industry.  See, e.g., United States v. Bilzerian, 926 F.2d 1285, 1294 ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."); SEC v. Lorin, 877 F.Supp. 192, 196 (S.D.N.Y. 1995), modified, 76 F.3d 458 (2d Cir. 1996); Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 511 (2d Cir. 1977), cert. denied, 434 U.S. 861, 54 L.Ed.2d 134, 98 S. Ct. 188 (1977).  In Marx, the Second Circuit recognized that while an expert "may testify to an ultimate fact, and to the practices and usages of a trade, we think care must be taken lest, in the field of

5

> securities law, he be allowed to usurp the function of the judge."
> 550 F.2d at 512.  Specifically, the Second Circuit noted that an
> expert may tell the fact-finder, "<u>whether he thinks the method of
> trading was normal</u>, but not, in our view, whether it amounted to
> illegal manipulation under Section 9 of the Securities Exchange
> Act of 1934." <u>Id.</u> [Emphasis supplied]

And (at \*10):

> Defendants argue that Lowry's statements that "certain trading
> patterns would raise 'red flags'", and that "these trading patterns
> would have raised questions for an experienced trader…"are
> unsupported and unverifiable conclusions and therefore
> inadmissible.   Def. Motion at 13 (citing Lowry Rep. at 14).
> However, Lowry arrives at such conclusions based on his
> knowledge of <u>typical trading activity and the types of trading
> patterns that an experienced trader would recognize as irregular,
> and as such, are supported by his 30 years of experience in the
> securities industry</u>. (Citations omitted).  This is precisely the type
> of testimony regarding the "practices and usages of a trade" that
> the Court found permissible and indeed helpful in *Marx*.  550 F.2d
> 505, 510-511. [Emphasis supplied]

> With respect to defendant's claim that <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509

U.S. 579 (1993) precluded use of the expert's testimony, the Court observed (at \*11-12):

> …the Court does not agree with the defendants' assertion that the
> *Daubert* factors need to be applied in the case at bar in order to
> evaluate the reliability of Lowry's testimony…

> Since the conclusions which Lowry arrives at are based on his
> analysis of the trading records and other documents provided to
> him, and the process of comparing the information contained
> therein with his knowledge of the standard practices of the
> securities industry, the reliability of his testimony can be
> sufficiently evaluated by inquiring into Lowry's thirty years of
> experience as a regulator, compliance director, and securities
> consultant, as well as his experience testifying as an expert in
> approximately 30 securities actions.

> Defendant U.S. Environmental subsequently moved to reargue the <u>in limine</u>

motion, and in a further opinion (2003 U.S. Dist. LEXIS 12580 at fn. 3 (S.D.N.Y. 2003), the

court adhered to its original decision stating that the witness "based on his knowledge of typical trading activity and types of trading patterns that an experienced trader would recognize as irregular…"   The expert testified regarding his findings and observations from his review of trading records, "assisting the court with helpful factual conclusions based on that review, but not giving legal conclusions…" (Id).

The SEC has also used an expert in at least one manipulation case to opine that increasing price quotations for stock "did not appear to be warranted by the market or market conditions."  SEC v. Lorin, 877 F.Supp. 192 (S.D.N.Y. 1995).  See also, Capitol Records, Inc. v. MP3 Tunes LLC., 2004 U.S. Dist. LEXIS 11218 at *34.

As the Court noted in U.S. Environmental, the factors enumerated in Daubert v. Merell Dow Pharm., Inc., 509 U.S. 579 (1993) are inapplicable to testimony based on the personal experience of the proposed expert.  See, Lidle v. Cirrus Design Corporation, 2010 U.S. Dist. LEXIS 67031 at *16-17 (S.D.N.Y. 2010):

> …"the *Daubert* factors 'do not all necessarily apply even in every instance in which reliability of scientific testimony is challenged,' and in many cases, the reliability inquiry may instead 'focus upon personal knowledge and experience' of the expert."  Bah v. Nordson Corp., 00 Civ. 9060, 2005 U.S. Dist. LEXIS 15683, 2005 WL 1813023 at *7 (S.D.N.Y. Aug. 1, 2005) (quoting *Kumho Tire*, 527 U.S. at 150); (see Pls. Opp'n. Mot. Strike Hughes 40-41).  In fact, "[a]n expert may base his opinion on experience alone, and [Defendant's] arguments implicate the weight of the evidence, rather than its admissibility."  Figueroa v. Boston Scientific Corp., 254 F.Supp. 2d 361, 368 (S.D.N.Y. 2003).  In the instant matter, as in *Figueroa*, Hughes "has extensive experience, education, and knowledge in the …engineering field and also reviewed relevant literature."  *Id.*  Moreover, "while his opinion may not be grounded in a plethora of hard facts, data, studies, and scientific literature, it is certainly neither novel scientific evidence, nor approaching the outer boundaries of traditional scientific and technological knowledge."  *Id.*  Therefore, any doubts as to Hughes' testimony may be resolved through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof [which] are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In Figueroa v. Boston Scientific Corporation, 254 F.Supp. 2d 361, 368 (S.D.N.Y. 2003), the Court noted:

> An expert may base his opinion on experience alone, and BSC's arguments implicate the weight of the evidence, rather than its admissibility. The "lack of textual authority for his opinion[] goes to the weight, not the admissibility, of his testimony." McCullock, 61 F.3d at 1044. Additionally, the fact that an expert "may have neglected to perform some 'essential' tests or measurements...goes to the weight of his testimony, not its admissibility." Lappe v. Am. Honda Motor Co., 857 F.Supp. 222, 228 (N.D.N.Y. 1994).

The Second Circuit "has adopted a liberal standard for qualifying an expert, and there is no requirement that a witness have formal education or training before being qualified as an expert..." Argonaut Ins. Co. v. Samsung Heavy Industries, Co., Ltd., 929 F.Supp. 2d 159, 168 (N.D.N.Y. 2013), quoting Peerless Insurance Company, 2008 U.S. Dist. LEXIS 112298 (E.D.N.Y. 2008).

There is a presumption of admissibility of expert testimony. Davids v. Novartis Pharmaceutical Corporation, 857 F.Supp. 2d 267 (N.D.N.Y. 2012). The advisory committee's note to Fed.R.Evid. 702 notes that "the rejection of expert evidence is the exception rather than the rule."

The opinions offered in opposition to summary judgment and to be offered at trial are admissible: To the extent defendant referred to Mr. Wollack's report in opposing summary judgment and to the extent he will offer such opinions at trial (see Declaration of Richard M. Asche in opposition to the in limine motion), the opinions are clearly within his sphere of expertise. In opposing summary judgment, defendant cited Mr. Wollack's report sparingly, primarily to support Mr. Moncada's testimony concerning his trading strategies. In order to

rebut plaintiff's claim that Mr. Moncada had no rational reason for placing and cancelling large

lot orders, Mr. Moncada testified in his deposition that he placed the orders as a way of testing

the market or "asking for liquidity."  (EBT, p. 99, 129-130).  In connection with Mr. Moncada's

affidavit, we cited Mr. Wollack's report to show that this was a common practice among traders:

> Moncada's trading style of buying and selling thousands of
> contracts and at times using large lot orders indicates he relied on a
> trader's intuition and feel of the market in addition to fundamental
> and technical analysis. <u>Sometimes large orders may be used to test
> the strength of a trader's position or direction of the market</u>. When
> executed on a large order, Moncada did not immediately exit the
> position but instead held it. He was an active trader, trading
> thousands of contracts per day.  <u>At times, active traders such as
> Moncada put large orders in the market feeling that the market was
> going in their direction and want to add to their position but only if
> immediately executed</u> (p. 2).

Mr. Wollack will not opine as to Mr. Moncada's actual motivations, but will

merely state his opinion as to how active traders behave and why.  This "experience-based"

testimony lends credence to Mr. Moncada's explanation.

Similarly, Mr. Moncada testified in his deposition that he placed large lot orders

in order to get size priority on his trades (EBT, p. 138-139).  Mr.  Wollack, again without

opining on Mr. Moncada's actual motivation, supported the rationale based upon his trading

experience and knowledge of the rules.  He stated:

> One important reason for frequently entering and canceling orders
> is to obtain time and allocation priority in the execution of his
> orders.  Under the CME's matching algorithms for wheat futures
> (CME Globex Product Reference) the first order at a price level
> gets tops allocation up to a maximum of 100 contracts, then there
> is a Pro Rata allocation of all orders at the price level and if the
> incoming quantity is not satisfied, the remainder is filled using a
> FIFO allocation.
>
> Thus, if Moncada was the first large order at a price, he would
> have priority only on the first 100 contracts and then would be
> filled no a Pro Rata basis and possibly a FIFO allocation.  If

> Moncada was not the first order at a price, then he would only be
> filled on a Pro Rata basis and would only have partial fills on his
> large orders.  To obtain priority on the first 100 contracts Moncada
> would have to be the first order at a new price.  This would explain
> frequent entering and cancelling orders in order to obtain priority
> on the first 100 contracts or at least increase his Pro Rata share.

(Report p. 3-4)  (Memorandum in Opposition, p. 12)

Mr. Moncada also testified as to his reasons for quickly cancelling large lot orders.  Mr. Wollack, again without opining as to Mr. Moncada's actual motivation, but based on his experience, provided support for Mr. Moncada's stated rationale:

> …"[f]or traders like Moncada there is no upside to leaving a
> resting order waiting for the market to come back to his price
> because the dynamics of the market may have changed.  If
> Moncada was trading for the moment then he would want to be
> immediately executed because he thought the market was going in
> his direction.  If not executed then he would cancel because
> otherwise if the market would move away from his order and then
> subsequently come back to that price it might mean the market was
> reversing.  To avoid this possibility, he would cancel his orders.

(Report, p. 4) (Memorandum in Opposition, p. 15).

Similarly, Mr. Wollack opined that "Position traders or hedgers …are more likely to use iceberg orders whereas to Moncada time is more of the essence and not conducive to iceberg orders… (Report, p. 4).  While Mr. Wollack's testimony as to what was important to Mr. Moncada would not be admissible absent Mr. Moncada's own testimony, it would be admissible to show the distinction between "position traders or hedgers" and traders with Mr. Moncada's trading objectives.

The only other references to Mr. Wollack's report in defendant's opposition to summary judgment were examples noted by Mr. Wollack which were inconsistent with plaintiff's theory.  See, e.g., Memorandum in Opposition, p. 20).  The reports of both experts are replete with examples supporting their positions, and this is a perfectly appropriate use of expert testimony.

10

The cases cited by plaintiff are inapposite:  Plaintiff cites a number of cases discussing the Daubert standards for admissibility of scientific evidence and claim that the Court's focus must be on the expert's "reasoning and methodology."  (Memorandum, p. 4).  None of the cases cited by plaintiff relate to the type of testimony proffered here, testimony concerning trading patterns offered through an expert trader.  In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court emphasized that the standard for admissible of expert testimony is flexible, and merely held that the District Court had not abused defendant's discretion in declining to admit testimony of an expert concerning the cause of a tire blowout.  In Nimely v. City of New York, 414 F.3d 381 (2nd Cir. 2005), the Court noted that there is a "liberal" standard for the admissibility of expert testimony (Id. at 395) but declined to overrule the District Court's rejection of testimony opining on the credibility of witnesses, a feature not present here.  In Marvel Worldwide, Inc. v. Kirby, 777 F.Supp.2d 720, 729 (S.D.N.Y. 2011), aff'd in part, 726 F.3d 119 (2nd Cir. 2013), this Court cited a number of reasons for the exclusion of the expert's proffered testimony, none of which is relevant at bar:  that the expert was being used as a "conduit in producing hearsay…"; that the expert testimony was not necessary to help the jurors understand the issues; that the experts offered opinions concerning the intent or motivation of individuals; and that an expert offered opinions on the credibility of testimony, thereby usurping the province of the jury.

In SEC v. Badian, 822 F.Supp.2d 352 (S.D.N.Y. 2011), the Court declined to allow an expert to testify because his proposed testimony was "replete with inadmissible, generalized statements of law, legal conclusions and conclusory statements regarding defendants motivations…"  Id. at 357.  To the same extent, see, Primavera Familienstifung v. Askin, 130 F.Supp.2d 450 (S.D.N.Y. 2001), cited by plaintiff at page 4 of its Memorandum.

Nor are the cases cited by plaintiff at page 5 of its Memorandum controlling in this case. In <u>Algarin v. N.Y.C. Dep't. of Correction</u>, 460 F.Supp.2d 469 (S.D.N.Y. 2006), plaintiff's medical malpractice expert failed to establish any generally accepted standard of treatment. In <u>Compania Embotelladora Del Pacifico v. Pepsi Cola Co.</u>, 650 F.Supp.2d 314 (S.D.N.Y. 2009), the Court found that the opinion was based on "unreliable and inaccurate data" and contained "unsupportable assumptions" (<u>Id</u>. at page 320), and in <u>Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc</u>., 314 F.3f 48 (2d Cir. 2002), the Court rejected proposed damage testimony resulting from disparaging of plaintiff's business because the expert made no effort to determine causality and because the expert failed to link loss of business to any specific customer as required by state substantive law.

The cases cited at page 6 of plaintiff's Memorandum, <u>Highland Capital Mgmt. L.P. v. Schneider</u>, 551 F.Supp.2d 513 (S.D.N.Y. 2008) and <u>DiBella v. Hopkins</u>, 403 F.3d 102 (2d Cir. 2005), for the proposition that an expert cannot testify as to legal conclusions, have no applicability here with respect to Mr. Wollack's proposed testimony (although they may limit the proposed testimony of plaintiff's expert, Mr. Bessembinder).

Plaintiff claims -- without citing a single case – that "an opinion of whether an attempted manipulation occurred in the market is dependent on, among other things, a learned analysis of the trading data…" This <u>ipse dixit</u> by plaintiff's counsel finds no support in the case law.  Manipulation occurs where a trader has no legitimate economic reason for a pattern of trading -- such as where he enters trades which are likely to lose money.  Mr. Wollack examined Mr. Moncada's trading records and concluded that his trading patterns were consistent with well-known strategies used by commodities traders.

Plaintiff cites In re Blech Secs. Litig., 2003 U.S. Dist. LEXIS 4650 (S.D.N.Y. 2003) in support of its claim; however, Blech supports the defendant, not plaintiff. In Blech, the Court made the following observations relevant to the case at bar (Id. at *52, 53):

> This case is complicated by the fact that the parties have not contended that there is an accepted methodology for determining liability and calculating damages in market manipulation cases. Market behavior is not as objectively ascertainable as reactions in the world of physical science. As the Advisory Committee to Rule 702 recognized, "Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. Fed. R. Evid. 702, Advisory Comm. Notes.
>
> Nonetheless, expert testimony is especially appropriate in this case. The Advisory Committee Notes to Rule 702 instruct, "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Here, proper testimony is for an expert familiar with the market to explain terms and practices that a lay jury would not understand. As the Second Circuit stated, "Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts."

And further at *56-57:

> As the Advisory Committee Notes to Rule 702 explain, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

In Blech, the Court found that an expert was permitted to testify about certain "red flags" in the trading patterns and to "identify the factors, which he believes indicate market manipulation…"

Plaintiff objects to Mr. Wollack's offering opinions concerning the lack of evidence that Mr. Moncada's trading caused an effect on the price of wheat, claiming that Mr. Wollack did not conduct an exhaustive study of all of the available trading data.  Whether or not plaintiff is correct, defendant does not intend to rely on Mr. Wollack's conclusion in this regard, since plaintiff's expert, Mr. Bessembinder, concluded that the effect on prices was essentially minimal.

Mr. Wollack might testify, however, as to his observations from reviewing the trading data that the price of wheat moved in one tick increments, indicating according to Mr. Wollack that Mr. Moncada's large lot orders did not affect volatility.  (At this point, it is not clear whether volatility has anything to do with the issues in this case).

Plaintiff next seeks to prevent Mr. Wollack from testifying as to what Mr. Moncada intended (p. 14-16).  We agree that testimony as to the specific intentions of the defendant is beyond the competency of any expert (including plaintiff's expert, Mr. Bessembinder).  However, it is not beyond the competency of Mr. Wollack to testify, for example, that if Mr. Moncada wished to avoid having his large lot orders executed, he could have done so by resorting to algorithmic trading as oppose to manual trading.  It is also well within the competence of an expert to testify as to why a trader such as Mr. Moncada would cancel his large lot orders quickly if not executed and would not use iceberg orders.

Of course, to the extent that Mr. Wollack's opinion depends on Mr. Moncada's professed intentions, the testimony would be dependent upon Mr. Moncada so testifying.  Thus, Mr. Wollack can use as a premise the fact that "to Moncada time is more of the essence", or "if Moncada was trading for the moment."  These statements are not opinions, but merely predicates for opinions based upon Mr. Moncada's testimony.  The suggestion that Mr. Wollack cannot

14

predicate his opinion on Mr. Moncada's testimony because he spoke only briefly with Mr. Moncada is absurd.  Either the opinion will be supported by Mr. Moncada's testimony or it will not.  The Court can determine whether the predicate exists at the time the testimony is offered.

The plaintiff claims (page 16, <u>et</u>. <u>seq</u>.) that Mr. Wollack cannot testify as to traders strategies generally in the commodities market.  However, this is precisely the type of testimony which the Courts allowed in <u>Blech</u> and <u>SEC v. U.S. Environmental</u>, <u>supra</u>.  To the extent that plaintiff wishes to challenge Mr. Wollack on the absence of supporting case studies, it is free to do so.  But, as the Court noted in <u>Blech</u>, <u>supra</u>, there is no "accepted methodology for determining liability…in market manipulation cases."

Plaintiff next claims that proposed testimony with regard to "risk" is irrelevant and cites cases at page 19 which it claims show that manipulators often take risk.  Not one of the four cases cited by plaintiff at page 19 of its Memorandum suggests that a defendant in that case took market risk.  Indeed, the tenor of those cases is that the defendants took positions which were economically contraindicated because they were certain to reap larger profits down the line.

Finally, plaintiff claims that an expert cannot be proffered solely for the purpose of constructing a narrative.  Incredibly, plaintiff seeks to parlay this general principle into a claim that Mr. Wollack should be prohibited from giving examples to support his conclusions.  No case cited by plaintiff supports this proposition.

<u>Conclusion</u>

Plaintiff's motion for <u>in</u> <u>limine</u> ruling striking the report of Steven Wollack should

be denied.

Dated:     New York, New York
           March 26, 2014

                        Respectfully submitted,

                        Litman, Asche & Gioiella, LLP
                        Attorneys for Defendant Eric Moncada

                        By: <u>/s/  Richard M. Asche</u>
                            Richard M. Asche

                        140 Broadway – 38th Floor
                        New York, New York  10005
                        Tel. (212) 809-4500
                        Fax (212) 742-8757