UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

U.S. COMMODITY FUTURES TRADING
COMMISSION,

        Plaintiff,

    -against-                                          12 Civ. 8791 (CM)

ERIC MONCADA; BES CAPITAL LLC;
and SERDIKA LLC,

        Defendants.

------------------------------------------------------------x

## OPINION AND ORDER STRIKING EXPERT REPORT OF STEVEN E. WOLLACK

McMahon, J.:

      In opposition to the motion for summary judgment made by the Plaintiff Commodity Futures Trading Commission ("CFTC"), the Defendant Eric Moncada has submitted a 12-page report prepared by purported expert Steven E. Wollack. The CFTC has moved to strike the expert report. That motion is granted.

      In this action, the CFTC alleges that on October 6, 12, 14, 19, 26, 27, 29 and 30, 2009, Moncada attempted to manipulate the price of the December 2009 contract for CBOT #2 Soft Red Winter Wheat Futures, in violation of various sections of the Commodity Exchange Act, 7 U.S.C. §§9, 13b and 13(a)(2). The CFTC alleges in substance that Moncada repeatedly placed and then almost immediately cancelled orders for 200 lots or more of these futures, at or near the best bid or offer price, with the intent to create a misimpression of increasing liquidity in the market. At the same time, he was placing smaller lot orders on the opposite side of the market, with the intent of taking advantage of any price movements that might result from the misleading impression he was creating with his now-you-see-it-now-you-don't large-lot orders. The CFTC does not contend that Moncada always succeeded in achieving what it believes to have been his goal; the charge is attempted, not actual, manipulation, and all the Commission need prove is (1) intent to affect the market price of a commodity, and (2) some overt act in furtherance of that intent. *CFTC v. Parnon Energy, Inc.*, 875 F. Supp. 2d 233, 250 (S.D.N.Y. 2012).

1

The CFTC has also charged Moncada with engaging in fictitious sales and entering into non-competitive transactions on four trading dates in October 2009; those charges are not relevant to the expert report that is the subject of the pending motion.

The defendant offers in opposition to the CFTC's motion for summary judgment a report from Steven E. Wollack, who purports to be an expert in commodities trading. Mr. Wollack opines that Moncada's trading did not manipulate the market, and that that the fact that plaintiff cancelled a large number of orders in short periods of time does not, in and of itself, prove intent to manipulate the market. What is important, he says, is whether the trader was taking market risk; by contrast, he opines that traders who want to manipulate the market try to avoid risk. Because defendant did not use computer algorithms or engage in high speed trading, Wollack opines that Moncada was at great a risk of having trades in which he allegedly did not wish to engage actually execute. This fact, he says, negates intent to manipulate. Wollack also offers some opinions about particular orders that Moncada placed to illustrate what the defendant "might" have intended by his conduct, and opines that defendant's behavior failed to move the market—or to move it very much—which, in his view, is also evidence of defendant's lack of intent to move the market.

The CFTC moves to strike Wollack's report in whole or in substantial part prior to the court's consideration of the motion for summary judgment. That motion is granted.

For expert testimony to be admitted, the expert must be found to be qualified to render his opinion; his opinion must be reliable; his opinion must be relevant; and his opinion must not contain legal conclusions. FED. R. ED. 702. The court is the "gatekeeper" who must decide whether expert testimony meets these standards. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

An expert is someone who by virtue of skill, training, or experience can help enlighten the trier of fact about some esoteric field of knowledge not generally shared by the public at large. Experts need not be scientists, but when the proffered expert is offering experience-based expert testimony, the court must determine whether he "employs in the courtroom the same level of intellectual rigor that characterized the practice of an expert in the relevant field." *Id.* at 152.

In determining whether an expert's opinions are reliable, the court's focus must be on the expert's reasoning and methodology, not on his conclusions. *General Electric Co v. Joiner*, 522 U.S. 136, 146 (1997). Judges are not to "be deceived" by experts who offer their credentials in lieu of analysis; impressive and extensive experience does not equate to analysis. *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001). For this reason, expert opinions that are not backed up with analysis, studies, or facts that support the conclusions do not meet the threshold test of reliability. *Compania Embotelladora Del Pacifico v. Pepsi Cola Col.*, 650 F. Supp. 2d 314, 319-20 (S.D.N.Y. 2009).

Even if the testimony of an expert is based on reliable methodology, a court must evaluate its relevance, by deciding whether the information provided "will assist the trier of fact to understand the evidence or determine a fact in issue." FED. R. CIV. 702. Expert testimony that is not probative of a key issue is irrelevant and inadmissible. *Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.*, 314 F. 3d 48, 60 (2d Cir. 2002).

Finally, expert testimony on issues of law is inadmissible. *United States v. Bilzerian*, 926 F. 2d 1285, 1294 (2d Cir. 1991). The expert cannot tell the trier of fact what result to reach. While an expert can "make factual conclusions that embrace an ultimate issue to be decided by the fact-finder, the expert cannot give testimony stating ultimate legal conclusions based upon those facts." *Highland Capital Mgmt L.P. v. Schneider*, 551 F. Supp. 2d 173, 182-83 (S.D.N.Y. 2008); *Di Bella v. Hopkins*, 403 F. 3d 102, 121 (2d Cir. 2005).

### (1) Wollack Is Not Unqualified to Render Expert Opinion Testimony.

The CFTC first moves to strike Wollack's Report on the ground that Wollack lacks the sort of qualifications that would be necessary to evaluate whether Moncada attempted to manipulate the December 2009 Wheat Futures Contract, or what impact Moncada's large-lot orders would have had on the market price of the December 2009 Wheat Futures Contract. I am unconvinced.

A witness may offer opinion testimony pursuant to Fed. R. Ev. 702 as long as he is qualified as an expert by virtue of his "knowledge, skill, experience, training or education" in a relevant area. The CFTC complains that Wollack lacks the academic credentials and teaching/publication history that it believes would be necessary to render such opinions, because he does not give lectures, teach, or publish research papers.

The Commission protests too much. Academic credentials, teaching experience, and the publication of papers are not necessary accoutrements to a robust practical resume that can qualify a person as an expert by virtue of knowledge and experience—both of which are specifically mentioned in Fed. R. Ev. 702. Frankly, academic experience can be overrated; academics too often live far from the realities of the day to day marketplace, and their lack of practical experience sometimes renders their analysis fanciful. Therefore, the fact that a practitioner of a particular trade or profession has not taught in an academic institution or written papers or spoken at industry conferences does not render him unqualified to render an opinion about the matters in suit.

Mr. Wollack actually has excellent credentials relevant to this lawsuit—he has been a commodities trader for decades, he has a seat on the Chicago Mercantile Exchange ("CME"), he is an attorney who has represented CME members in arbitrations, and he has served as an industry arbitrator. He probably has a better understanding about how the commodities market works that does some business school professor who has studied a great deal but never traded a futures contract under the gun. As Moncada did not employ computer algorithms or high speed

3

trading strategems, Wollack's opinions about Moncada's style of trading (which he contends are the product of trader intuition and "feel of the market") could, if properly predicated, have some relevance to the issues before the court. I will not disqualify him for lack of credentials.

That, however, is only the first step in the *Daubert* inquiry. It is not that Mr. Wollack is unqualified to address trading issues that impels me to strike most of his expert report, but rather that the opinions he offers frequently do not address any relevant issue in a manner that is likely to be helpful to the trier of fact.

### (2) Portions of Mr. Wollack's Report Must Be Stricken Because His Methodology is Suspect.

The CFTC is on firmer ground in moving to strike portions of Wollack's Report because he fails to use any recognized methodology—or, for that matter, any methodology at all.

In reaching his opinions, Mr. Wollack indisputably did not perform any quantitative analysis of the trade data that was provided by the CFTC and used by the CFTC's own experts. He did not review it, ostensibly because the spreadsheets were "beyond the spreadsheet capability of my Excel." (Wollack EBT at 75-76.)[1]

Instead of reviewing all trading data for all traders on the eight alleged manipulation dates, Wollack only looked at a small fraction of Moncada's trading activity on five of the dates on which the alleged scheme took place. He also reviewed what he admitted were incomplete daily account statements from the Defendant's master and sub trading accounts. His work on this incomplete data set consisted of "eye-balling" the trade data for some (not nearly all) of Moncada's more than 700 large-lot orders. (Wollack EBT at 128-129.) Whatever his methodology (none is disclosed), he did not determine, whether other traders were reacting to Moncada's large-lot orders and cancellations. He did not even "eyeball," let alone analyze, trade data during periods when Moncada was *not* placing large-lot orders, even though that would have allowed him to compare average price movement in the CBOT Wheat Futures market when Moncada was trading with price movements when he was not. He identified no baseline against which he could measure price movement in the wake of Moncada's large-lot orders. He essentially did nothing at all except look at a fraction of the data in his possession and conclude that Moncada's activity had no impact on the market. Unfortunately, in the absence of any analysis at all of most of the available data, there is no reliable basis on which the "expert" could have reached such a conclusion.

The mere fact that so much relevant data was not even "eye-balled," let alone analyzed, renders Wollack's testimony about the lack of market impact from Moncada's cancelled orders highly suspect. But further undermining any confidence one could have Wollack's conclusions is

---

[1] This lack of computer capacity does not make the Court particularly comfortable with the reliability of Mr. Wollack to analyze data—even though I cannot quarrel with his savviness about the market.

4

Wollack;s admission that at least some of the small number of large-lot orders he actually "eyeballed" did in fact appear to have some effect on the market price (Wollack Report at 6.) At best, Wollack opines that Moncada's frequent cancellation of large orders—which he admits occurred "more than other traders"—did not cause "*erratic* price movements," and that price movement that occurred during the period of his trades were not "*excessive,*" He also contends that the cancelled orders (a few of which he discusses in some detail) did not have any impact on "market volatility." But whether the price movements were erratic or excessive, or whether the market was volatile or calm, are not issues to be decided in this case. I know of no reason why a small market movement could not be manipulative; the statute and regulations do not require that price movements be in multiple tick increments, or that they exceed some undefined threshold of volatility, before they can be deemed "manipulative." The fact that he is opining about matters not in issue renders Wollack's opinions irrelevant and inadmissible.

### (3) Wollack Cannot Testify about Moncada's Motives or Intent.

Significant portions of Wollack's Report contain conclusions based on his analysis of selected trades. That analysis is replete with Wollack's suppositions about Moncada's intent or motives. None of that testimony, which is based on nothing more than Wollack's surmise and one brief conversation with defendant, is admissible.

As an example of what I am talking about, Wollack says: "Moncada may have cancelled large orders more than other traders but frequent cancelling of orders is not a rule violation nor does it indicate intent to manipulate the market. It *could be due* to the CME's matching algorithms or *could be* the result of Moncada's aggressive style . . . ." (Wollack Report at 4 (emphasis added).)

The flaw in this type of "analysis" is obvious: Wollack has no idea why Moncada cancelled his large-lot orders, so he has no basis to conclude that defendant lacked intent to manipulate. Moncada is perfectly free to testify about his intentions and motivations, but no total stranger can offer his impressions about why Moncada *might have* done this or that—especially a total stranger who has no basis for his purported insights into Moncada's intentions. Statements from Wollack like "Moncada *may have anticipated* that the market was not be going higher [sic] and decided to liquidate a portion of his long position," and "Here *he was using* large orders to add to his position" are singularly unhelpful to the trier of fact, because Moncada and only Moncada is in a position to explain why he opened, added to or liquidated any particular position. (Wollack Report at 8 (emphasis added).) Moncada is free to explain his reasons to the Court; having Wollack tell me what Moncada's motives "must be" or "might be," or whether his trading style "may" have necessitated this or that, is purely speculative -- unless and until Moncada confirms what his motives "were" and what his style "did" necessitate, at which point Wollack's testimony becomes superfluous.

Furthermore, Wollack's proffered expert testimony is not predicated on—indeed, is totally divorced from—the one and only justification that Moncada identified at his deposition

5

for his lightning quick cancellation of orders: because he was "constantly reevaluating the market." (Moncada EBT at 114.) Expert testimony is admissible only when it would be helpful to the trier of fact; it is not helpful to have an expert, even one highly qualified, who opines about what a defendant's motives "might" have been when the defendant himself has testified about what his motives in fact "were."

Of course, if the trier of fact would be helped by knowing that other market participants behave in the same way that defendant behaved, expert testimony from someone like Mr. Wollack would be admissible. I can imagine ways in which testimony from a defense expert might have been useful to the court. It is possible, for example, that a seasoned market commodities professional like Wollack could testify about whether traders routinely evaluate the market and how they go about doing so. Wollack might even be able to explain what sort of market evaluation an experienced trader can perform in seven tenths of a second, which is apparently the amount of time between Moncada's placement of many of his large-lot orders and his cancellation of those same orders. But such testimony—which relies as its starting point on the defendant's explanation of what he actually did, rather than Wollack's supposition about what he must have done—is not the sort of testimony Wollack offers. Therefore, the testimony offered via his expert report is of no value whatever to the trier of fact.

Wollack cannot now cure this glaring defect by submitting a new report. I will simply not consider any of this testimony when I decide the motion for summary judgment.[2]

### (4) Wollack's Ipse Dixit Testimony, Based on His Own Experience, Is Stricken.

Wollack's statements about what other traders would do or how they would react have no basis other than his own personal experience as a trader—they represent nothing more than his assertion about how *he* would act or react. Wollack has never studied the practices or methods of traders, nor has he reviewed any such studies. Statements like "Moncada put himself at risk" because he did not use high speed trading could mean, as Wollack opines, that he was not trying to manipulate the market—or could mean that he was just behind the times and a bad manipulator. (Wollack Report at 3.) Wollack is, as the CFTC says, the quintessential expert who "offers credentials rather than analysis." *Askin*, 130 F. Supp. 2d at 529. Opinion evidence that is only connected to existing data by the *ipse dixit* of someone with experience in the field is not automatically reliable or admissible, and nothing in Wollack's Report affords this Court any confidence that Wollack's *ipse dixit* is worth the paper on which it is written—notwithstanding his long tenure and multiple roles in the commodities market.

---

[2] Should the Commission not prevail on the motion for summary judgment, I will not permit Wollack to listen to Moncada's trial testimony (should he give any) and then develop and offer an opinion about the validity of any reasons defendant might proffer. The CFTC has a right to an expert report, disclosed sufficiently in advance of the trial to comply with Fed. R. Civ. P. 26(b).

**(5) Wollack Cannot Testify to Legal Conclusions.**

Finally, Wollack cannot testify about legal conclusions. I recognize that he is an attorney and experienced arbitrator, but I need no help from a witness in order to decide issues of law.

## CONCLUSION

When you take out all the objectionable portions of Mr. Wollack's testimony, there is simply not much left to it. It is, therefore, stricken in its entirety. The Clerk of the Court is directed to close out the motion at Docket No. 66 and to remove same from this Court's list of pending motions.

Dated: June 30, 2014

                                                                  U.S.D.J.

BY ECF TO ALL COUNSEL