UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

U.S. COMMODITY FUTURES TRADING
COMMISSION,

        Plaintiff,

    -against-                                     12 Civ. 8791 (CM)

ERIC MONCADA,
BES CAPITAL LLC,
SERDIKA LLC,

        Defendants.

---------------------------------------------------------------x

MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND SCHEDULING CASE FOR TRIAL

McMahon, J.:

      The Court, for its memorandum decision denying the pending motion for summary judgment (Docket No. 52):

*1. Attempted Market Manipulation Claims*

      The Commodity Futures Trading Commission (CFTC), having obtained an order striking the testimony of defendants' expert, moves for summary judgment, arguing that, while intent is subjective and ordinarily for the trier of fact to resolve, this Court *is* the trier of fact, and the undisputed facts admit of but one inference—defendant intended to manipulate the market in CBOT December 2009 Wheat Futures.

      I have carefully read the parties' respective submissions, filtering out where necessary the references to defendants' expert, whose testimony I struck several weeks ago. Docket No. 75. I agree with the CFTC that virtually no material facts are in dispute—the trading records are the only material facts and they show what they show about the defendant Eric Moncada's trading history. I also agree with the CFTC that the most compelling inference one might draw from the trading records is that Moncada was indeed trying to manipulate the market.

In the end, however, the Second Circuit prefers that issues of intent go to trial, so the better part of valor is to hold a trial to resolve the lone undisputed issue—Moncada's intent. That trial, a bench trial, will be a limited proceeding. Plaintiff will introduce the trading records and the Report of its Expert, Mr. Bessembinder (which, in the case of an expert, substitutes for testimony by affidavit per my rules for bench trials). I will then listen to the cross-examination and any redirect of Mr. Bessembinder. Plaintiff may also choose to subpoena third-party witness James Moriarty, who (if he is called) will be examined and cross-examined like any other witness who is not in a party's control.

Defendants will submit testimony in the form of an affidavit from Mr. Moncada (per the Court's rules for bench trials); he will then be cross-examined in my presence.

The parties are directed to submit their proposed findings of fact and conclusions of law, separately numbered, to the Court no later than October 3, 2014. It is my usual practice to read the findings of fact that I adopt into the record at the conclusion of the evidence or shortly thereafter, thereby giving the parties a swift decision. I do not take post-trial briefs, and the summary judgment briefs should serve in place of pre-trial briefs. There is no need for a final pre-trial conference.

The trial will take place on November 17-18, 2014. The whole thing should take no more than two days, perhaps considerably less.

2. *Matched/Fictitious Sales Claim*

The parties agree that all the facts surrounding the CFTC's claim of fictitious sales are not in dispute: they are set forth at pages 16-18 of the CFTC's moving brief in support of its motion for summary judgment. Therefore, the Court finds the following as a matter of fact:

On Oct. 6, 2009, at 10:20:09.476 am, Moncada placed a buy order in the Serdika account for 80 lots at a price of 466 cents. At 10:20:10.943 am, approximately 1.5 seconds later, Moncada placed an offsetting sell order in the BES account for 80 lots also at a price of 466 cents. The entire BES sell order filled at the price of 466 cents within 0.001 seconds. The majority of the Serdika buy order, 58 lots, was filled at the price of 466 cents. The majority of the BES sell order and Serdika buy order filled against each other. (SUMF ¶ 72.)

Moncada testified that he was trying to match the two orders against each other. Moncada EBT 262:23-263:3.

On October 12, 2009, at 11:27:56.161 am, Moncada placed a sell order in the BES account for 116 lots at a price of 483 ½ cents. At 11:27:57:793, approximately 1.6 seconds later, Moncada placed on offsetting buy order in the Serdika account for 116 lots at a price of 483 ½ cents. Both orders immediately filled at the price of 483 ½ cents. The majority of the BES sell orders and Serdika buy orders filled against each other. (SUMF ¶ 74.)

Moncada testified that he was trying to match the orders against each other. Moncada EBT 265:6-19.

On October 15, 2009, at 10:34:54.801 am, Moncada placed an order in the BES account to sell 271 lots at a price of 499 cents. At 10:34:55.516, approximately 0.7 seconds later, Moncada placed an offsetting buy order in the Serdika account for 271 lots at a price of 499 cents). Both orders were completely filled at a price of 499 cents. The majority of the BES sell orders and Serdika buy orders filled against each other. (SUMF ¶ 76.)

Moncada testified that he was trying to match the orders against each other. (Moncada EBT 265: 10-265:19.)

Finally, on October 29, 2009, at 12:08:59.899, Moncada plced an order in the Serdika account to sell 154 lots at a price of 508 cents. At 12:09:17.266, approximately 17.3 seconds later, Moncada placed an offsetting buy order in the BES account for 154 lots at a price of 508 ¼ cents, thereby bidding to buy at a price one tick higher than the Serdika sell order. Both orders were immediately and completely filled at a price of 508 cents. The offsetting trade on October 29 was the only transaction that Moncada made in the BES account on that day. But orders at prices above the best offer price will first fill against any orders at the best offer price, which means an order to buy at a price of 508 ¼ cents would first be filled against a sell order at a price of 508. Not surprisingly, the entirety of the BES buy orders and Serdika sell orders filled against each other. (SUMF ¶ 78-79.)

Moncada testified that he was trying to match the orders against each other. (Moncada EBT 265:10-19.)

Moncada argues that the trades at issue were not fictitious because they placed the parties at risk; were intended only to "close out" positions in the relevant lots in one of the two accounts for which he traded; and were filled in part by other traders, not by each other.

A "wash" sale or a fictitious sale in violation of Section 4c(a) of the Commodity Exchange Act, 7 U.S.C. § 6c(a) and Reg. 1.38 thereunder, is one that has the appearance of submitting trades to the open market while negating the risk of price competition incident to such a market. *Stoller v. CFTC*, 834 F. 2d 262 (2d Cir. 1987). Prearranged trading is a form of fictitious sale because, "By determining trade information such as price and quantity outside the pit, then using the market mechanism to shield the private nature of the bargain from public scrutiny, both price competition and market risk are eliminated." *Harold Collins*, [1986-87 Transfer Binder] Comm. Fut. L. Rep. (CCH), ¶ 22,982 at 31,903 (C.F.T.C. April 4, 1986), *rev'd on other grounds sub nom. Stoller v. CFTC, supra.*

Reg. 1.38 requires that all purchases and sales of commodity futures be executed "openly and competitively." Conduct that violates Section 4c(a) also violates Reg. 1.38. Such non-

competitive transactions include orders placed by a trader with the intent that those orders trade against each other—transactions that, while giving the appearance of submitting trades to the open market, actually negate the market risk of the trade. *Lorenzen*, [2012-13] Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 32,535 at 72-118-120; *Harold Collins, supra.* [1986-87 Transfer Binder] at 31, 903, n. 23.

To prove such a claim, the CFTC must establish that there was:

1. A purchase and sale of any commodity for future delivery
2. Of the same delivery month of the same futures contract
3. At the same or similar price
4. With the intent of not making a bona fide trading transaction.

*Wilson v. CFTC*, 322 F. 3d 555, 559-60 (8th Cir. 2003); *Reddy v. CFTC*, 191 F. 3d 109, 119 (2d Cir. 1999).

Items 1-3 are established by virtue of facts the parties agree are undisputed. The question, again, is intent.

Here, there is no need for any trial, for there can be absolutely no dispute about Mr. Moncada's intent: he admitted it at his deposition. He testified that he intended to match the opposing orders from the two accounts he controlled. Game over. That he was doing so for the "benign" purpose of "closing out" his position in one of the two accounts is of no moment. Similarly, that others who happened to be in the market at the precise moment when three of the trades were made "caught" some portion of his orders and executed them, so that they did not trade entirely against each other, is of no moment; serendipity does not negate what Moncada was trying to do, because the orders would have traded against one another if no one else had been in the market at that moment. By placing the orders for the same commodity future at the identical or near-identical price and so close in time, Moncada eliminated the risk that the sell orders would not execute at a particular price. The sales qualify as fictitious sales.

This constitutes the decision and order of the Court.

Dated: July 15, 2014

*[signature]*

U.S.D.J.

BY ECF TO ALL COUNSEL