USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____10|1|14____

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES COMMODITY FUTURES TRADING COMMISSION,** <br> **Plaintiff,** <br><br> **v.** <br><br> **ERIC MONCADA; BES CAPITAL LLC; and SERDIKA LLC.** <br> **Defendant(s).** | Civil Action No. 12-cv-8791 (CM) (GWG) |

## [Proposed] CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST ERIC MONCADA

### I.   INTRODUCTION

On December 3, 2012, Plaintiff U.S. Commodity Futures Trading Commission

("Commission" or "CFTC") filed a twelve-count Complaint (Dkt. No. 1) against Eric Moncada

("Moncada"), BES Capital LLC ("BES") and Serdika LLC ("Serdika") seeking civil monetary

penalties, injunctive and other equitable relief for violations of the Commodity Exchange Act

("Act"), 7 U.S.C. §§ 1 *et seq.* (2006), and Commission Regulations, 17 C.F.R. §§ 1.1, *et seq.*

(2012).  On March 5, 2014, the Court entered an Order of Default Judgment, Permanent

Injunction, Civil Monetary Penalties and Other Equitable Relief Against Defendants BES Capital

LLC and Serdika LLC (Dkt. No. 65) ("Default Order").  On July 15, 2014, the Court entered a

Memorandum Order Granting in Part and Denying in Part Plaintiff's Motion for Summary

Judgment and Scheduling Case for Trial (Dkt. No. 77) ("Summary Judgment Order").  The

Summary Judgment Order found Moncada liable for violations of Section 4c(a) of the Act, 7

U.S.C. § 6c(a) (2006), and Commission Regulation 1.38, 17 C.F.R. § 1.38 (2012), relating to

four transactions on October 6, 12, 15, and 29, 2009, as alleged in the Complaint.  Moncada now

consents to the entry of this order for permanent injunction, civil monetary penalty and other equitable relief as follows, which resolves this litigation between the parties in its entirety.

## II.    CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Moncada without a trial on the merits or any further judicial proceedings, Moncada:

1.    Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Eric Moncada ("Consent Order");

2.    Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.    Acknowledges service upon him of the summons and Complaint;

4.    Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5.    Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

6.    Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7.    Waives:

   (a) any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2014), relating to, or arising from, this action;

(b) any and all claims that he may possess under the Small Business Regulatory

Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110

Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121

Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) any claim of Double Jeopardy based upon the institution of this action or the

entry in this action of any order imposing a civil monetary penalty or any

other relief, including this Consent Order; and

(d) any and all rights of appeal from this action, including but not limited to the

Court's ruling in the Summary Judgment Order;

8.      Consents to the continued jurisdiction of this Court over him for the purpose of

implementing and enforcing the terms and conditions of this Consent Order and for any other

purpose relevant to this action, even if Moncada now or in the future resides outside the

jurisdiction of this Court;

9.      Agrees that he will not oppose enforcement of this Consent Order by alleging

that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any

objection based thereon;

10.     Agrees that neither he nor any of his agents or employees under his authority or

control shall take any action or make any public statement denying, directly or indirectly, any

allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent

Order, or creating or tending to create the impression that the Complaint and/or this Consent

Order is without a factual basis; provided, however, that nothing in this provision shall affect

Moncada's: (a) testimonial obligations, or (b) right to take legal positions in other proceedings

to which the Commission is not a party.  Moncada shall undertake all steps necessary to ensure

3

that all of his agents and/or employees under his authority or control understand and comply

with this agreement;

    11.   Agrees to provide immediate notice to this Court and the Commission by

certified mail, in the manner required by paragraph 57 of Part VII. of this Consent Order, of any

bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the

United States;

    12.   Agrees that no provision of this Consent Order shall in any way limit or impair

the ability of any other person or entity to seek any legal or equitable remedy against Moncada

in any other proceeding; and

    13.   Neither admits nor denies the allegations of the Complaint as they pertain to the

Commission's allegations that Moncada attempted to manipulate the price of the December

2009 #2 Soft Red Winter Wheat commodity futures ("futures") contract traded on the Chicago

Board of Trade ("CBOT") (hereinafter "December 2009 Wheat Futures Contract"), in violation

of Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), or the

Findings of Fact and Conclusions of Law in Section IV of this Consent Order. Further,

Moncada agrees and intends that the allegations contained in the Complaint and all of the

Findings of Fact and Conclusions of Law contained in this Consent Order and the Summary

Judgment Order shall be taken as true and correct and be given preclusive effect, without further

proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf

of, or against Moncada; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a

(2012), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2014); and/or (c) any

proceeding to enforce the terms of this Consent Order.

### III.   PARTIAL SUMMARY JUDGMENT ORDER

14.      On July 15, 2014, the Court in its Summary Judgment Order found that Moncada

engaged in fictitious sales and non-competitive transactions in violation of Section 4c(a) of the

Act, 7 U.S.C. § 6c(a) (2006), and Commission Regulation 1.38, 17 C.F.R. § 1.38 (2012), when

Moncada executed certain transactions on October 6, 12, 15, and 29, 2009, while trading in the

BES and Serdika accounts.

### IV.   FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry

of this Consent Order and that there is no just reason for delay.  The Court therefore directs the

entry of the following Findings of Fact, Conclusions of Law, permanent injunction, civil

monetary penalty and equitable relief pursuant to Section 6c of the Act,  7 U.S.C. § 13a-1 (2012),

as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A. <u>Findings of Fact</u>**

**1.  Attempted Manipulation**

15.      On the trading days of October 6, 12, 14, 19, 26, 27, 29, and 30, 2009

(hereinafter "attempted manipulation dates"), Moncada engaged in a strategy of repeated and

persistent trading activity in an attempt to manipulate the price of the December 2009 Wheat

Futures Contract.

16.      Moncada's manipulative scheme employed the following trading tactics: 1)

manually placing and immediately canceling numerous orders for 200 or more lots of December

2009 Wheat Futures Contracts ("large-lot orders") without the intent to have the large-lot orders

filled, but instead with the intent to create the misleading impression of increasing liquidity in

the market ("Trading Tactic 1"); 2) placing these large-lot orders at or near the best bid or offer

price in a manner to avoid being filled by the market ("Trading Tactic 2"); and 3) placing small-lot orders on the opposite side of the market from these large-lot orders with the intent of taking advantage of any price movements that might result from the misleading impression of increasing liquidity that his large-lot orders created ("Trading Tactic 3").

17.     These trading tactics described above illustrate Moncada's intent to repeatedly affect the prices of the December 2009 Wheat Futures Contract both upward and downward. Moncada used these trading tactics while trading futures accounts in the name of BES ("BES account") and Serdika ("Serdika account").

18.     Moncada used Trading Tactic 1 when he placed and immediately canceled orders in excess of 200 lots to buy December 2009 Wheat Futures Contracts (hereinafter "large-lot buy orders") and when he placed and immediately canceled orders in excess of 200 lots to sell December 2009 Wheat Futures Contracts (hereinafter "large-lot sell orders").

19.     Moncada used Trading Tactic 2 when he placed many of his large-lot buy orders or large-lot sell orders at or near the market's best bid price or best offer price, respectively.  By doing so, Moncada ensured that his large-lot orders (buy or sell) appeared in the "best of book" orders that Globex displayed to other market participants.  However, Moncada entered his large-lot orders in a manner that minimized the risk that his large-lot orders would be hit or lifted by other market participants.

20.     Moncada used the first and second trading tactics with the intent to create the misleading impression of increasing liquidity in the market to other market participants.

21.     Moncada also used Trading Tactic 3 of placing small-lot orders on the opposite side of the market from these large-lot (buy or sell) orders (hereinafter "potentially benefitting orders") to capture any financial benefit that may have resulted from any price movements in

the market from the misleading impression of increasing liquidity created by the use of his first and second trading tactics. Moncada placed his potentially benefitting orders into the market immediately before or immediately after he placed his large-lot orders.

22.     Moncada's manipulative scheme was intended to capture immediate gains over a short period of time, and was distinct from his other trading activity throughout the day.

23.     On the attempted manipulation dates, Moncada manually entered a total of 710 large-lot orders. Moncada manually canceled at least 98 percent of the total volume of these orders.

24.     On the attempted manipulation dates, Moncada's large-lot orders were manually canceled on average within approximately 2.06 seconds of entry, and as quickly as 0.226 seconds. This short time between entry and cancelation of the large-lot orders and the use of the other trading tactics in his manipulative scheme evidences that Moncada did not intend to fill these large-lot orders and did not have a rational economic business purpose for placing them other than to attempt to influence prices of the December 2009 Wheat Futures Contract.

25.     Moncada placed significantly more large-lot orders in the December 2009 Wheat Futures Contract than all other market participants combined on the attempted manipulation dates. Further, Moncada canceled a significantly higher percentage of his large-lot orders by volume in the December 2009 Wheat Futures Contract than all other market participants combined on the attempted manipulation dates.

### a. Moncada's Use of His Manipulative Trading Strategy

26.     The following example illustrates Moncada's manipulative trading strategy of repeatedly and persistently using his trading tactics in his attempt to manipulate the price of the December 2009 Wheat Futures Contract upward. Moncada repeated, in one form or another,

each of his trading tactics on each and every one of the attempted manipulation dates to push market prices both upward and downward.

27.   On October 29, 2009, between 10:33:19 a.m. and 10:39:31 a.m., Moncada engaged in a pattern of manual trading activity in an attempt to manipulate upward the price of the December 2009 Wheat Futures Contract while trading in the Serdika account.

28.   As described more fully below, Moncada bought 25 lots of the December 2009 Wheat Futures Contract at prices of 506.5 and 506.75, in order to build a long position. Moncada then used all three of his trading tactics in an attempt to gain a financial benefit. First, he placed large-lot buy orders and then immediately canceled them. Second, when he placed the large-lot buy orders, he did so at the best bid price when there were already several orders at that best bid price; therefore, Moncada's large-lot orders had little chance of being filled. By placing and then canceling large lot orders at the best bid price, Moncada intended to create the misleading impression of increasing liquidity (on the buy side) in the market with the intent to move the market price upward. During this period, the market price rose as high as 508.75. Moncada also used his third trading tactic of placing potentially benefiting sell orders (small lot short positions) to offset his previous long position at the higher prices that may have resulted from these trading tactics.

29.   Specifically, between 10:33:19 a.m. and 10:33:21 a.m., Moncada accumulated 25 lots of a long position at prices of 506.5 and 506.75 (*i.e.* bought low). Sometime after 10:38:25 a.m., Moncada offset these long positions at prices of up to 508.75 (*i.e.* sold high).

30.   As detailed in the chart below, Moncada, after 10:33:21 a.m., entered a series of six large-lot buy orders, of 402 lots and 500 lots, over a period of five minutes. Moncada canceled these six large-lot orders within 0.575 to 2.696 seconds of entry (Trading Tactic 1).

| Order Time | Lot Size | Price | Distance From Best Bid (Ticks) | Filled Lots | Time to Cancel |
|---|---|---|---|---|---|
| 10:33:25.251 a.m. | 500 | 506.5 | 0 | 0 | 1,283 seconds |
| 10:34:40.764 a.m. | 402 | 506.5 | 0 | 0 | 0.983 seconds |
| 10:35:41.260 a.m. | 402 | 506.75 | 0 | 0 | 0.575 seconds |
| 10:36:42.715 a.m. | 500 | 507.75 | 0 | 4 | 2.696 seconds |
| 10:37:40.395 a.m. | 500 | 508.5 | 0 | 1 | 0.746 seconds |
| 10:38:24.755 a.m. | 402 | 508.5 | 0 | 1 | 0.737 seconds |

31.     Of the 2,706 lots comprising these six large-lot buy orders, only six lots were

filled, with the remaining 2,700 lots canceled. Moncada entered these large-lot buy orders

consistently at the best bid price, when there were already several orders ahead of Moncada's at

the best bid price (Trading Tactic 2). This allowed Moncada's large-lot orders to appear in the

best of book on Globex, while minimizing the risk that the large-lot orders would be filled. The

prices of the large-lot buy orders that Moncada placed rose with the market price; the first large-

lot buy order was at 506.5, the last at 508.5.

32.     Beginning one second after canceling his first large-lot buy order and continuing

one minute after canceling his sixth large-lot buy order, Moncada entered a series of potentially

benefiting sell orders at prices ranging from 507 to 508.75 (Trading Tactic 3). Moncada entered

these potentially benefitting orders with the intent to take advantage of any possible market

price movement resulting from the misleading impression of increasing liquidity on the buy side

his large-lot orders may have created.

33.     A total of 66 lots of the potentially benefitting sell orders were ultimately filled,

with prices ranging from 507 to 508.75. These prices were between one and eight ticks higher

than the prices Moncada received when he filled his buy orders before the large-lot orders.

Therefore, Moncada bought multiple contracts at 506.5 and 506.75 and sold them for 507 and

508.75.

9

### b. Moncada Repeatedly Employed His Manipulative Trading Strategy on Each of the Attempted Manipulation Dates

34.     The example above in paragraphs 26 through 33 illustrates how Moncada attempted to manipulate the price of the December 2009 Wheat Futures Contract upward by using his three trading tactics in his manipulative trading strategy.  Moncada also engaged in similar activity intending to push the market price downward.  Moncada repeated this trading strategy multiple times on each of the attempted manipulation dates in his attempt to manipulate the price of the December 2009 Wheat Futures Contract in the BES account and in the Serdika account.  Specifically, on each of the attempted manipulation dates – with the intent to avoid being hit or lifted by other market participants – he placed and immediately canceled between 37 and 118 large-lot orders (Trading Tactic 1), at or near the best bid or offer price (Trading Tactic 2).  Further, on each of the attempted manipulation dates, Moncada placed small-lot potentially benefiting orders on the opposite side of the market from his large-lot orders with the intent of taking advantage of any price movements that might result from the misleading impression of increasing liquidity that his large-lot orders created (Trading Tactic 3).

### c. Moncada's Large-Lot Trading Activity Was Significantly Different from the Rest of the Market

35.     On each of the attempted manipulation dates, Moncada's large-lot order activity in the December 2009 Wheat Futures Contract was significantly different than the large-lot order activity by the other market participants in terms of volume and the speed at which he consistently canceled his large-lot orders.

36.     As shown in the chart below, on the attempted manipulation dates, Moncada entered and immediately canceled the following volumes of large-lot orders with overall high cancelation rates.  By contrast, the rest of the market entered significantly less volume, and canceled significantly less of the volume of its large-lot orders.  Contrary to Moncada's large-

lot trading activity, most of the other market participant's large-lot orders were filled completely or partially, and remained on the market for extended periods of time.

| | MONCADA | | MARKET | | CANCELLATION RATE | |
|---|---|---|---|---|---|---|
| Attempted Manipulation Dates | Total Volume of Large-Lot Orders | Total Canceled Volume of Large-Lot Orders | Total Volume of Large-Lot Orders | Total Canceled Volume of Large-Lot Orders | Moncada's by Volume | Market's by Volume |
| October 6 | 18,924 | 18,711 | 4,580 | 477 | 98.87% | 10.41% |
| October 12 | 15,766 | 15,546 | 14,323 | 4,493 | 98.60% | 31.37% |
| October 14 | 29,216 | 28,860 | 12,730 | 2,673 | 98.78% | 21.00% |
| October 19 | 35,551 | 35,201 | 18,958 | 7,689 | 99.02% | 40.56% |
| October 26 | 42,878 | 41,986 | 20,549 | 1,096 | 97.71% | 5.33% |
| October 27 | 34,161 | 33,659 | 9,207 | 1,736 | 98.53% | 19.23% |
| October 29 | 49,088 | 48,923 | 18,138 | 5,995 | 99.66% | 33.00% |
| October 30 | 16,438 | 16,433 | 10,248 | 3200 | 99.97% | 31.23% |

37.    For example, on October 29, 2009, Moncada entered 118 large-lot orders for a total volume of 49,088 lots. Moncada canceled, either completely or partially, all of his large-lot orders, and was partially filled for only 165 lots on this day. The remaining 48,923 lots were canceled, representing 99.66 percent of the total volume of his large-lot orders.

38.    To the contrary, on the same day, the rest of the market only placed 51 large-lot orders for a total volume of 18,138 lots. The rest of the market canceled, either completely or partially, only 16 of those large-lot orders for a total volume of 5,995 lots. As such, the market only canceled 33 percent of the total volume of its large-lot orders on October 29, 2009, as compared to Moncada's cancellation rate of 99.66 percent.

11

39.    Moncada's trading activity was also significantly different from the rest of the market with respect to the duration that his large-lot orders stayed open in the market. On the attempted manipulation dates, Moncada's large-lot orders were in the market for an average of 2.06 seconds, with some canceled within 226 milliseconds. To the contrary, the average amount of time that a large-lot order placed by another market participant remained open in the market was 9 hours 16 minutes and 35 seconds on the attempted manipulation dates. Based on the speed and immediacy in which Moncada canceled his large-lot orders, especially as compared to rest of the market, he did not intend for each of his large-lot orders to be filled.

### d.   Moncada's Use of "Iceberg" Orders

40.    The electronic trading platform used by CBOT, Globex, allows traders to enter "iceberg" orders, which are orders for a large number of lots that only display a small number of the lots to the market at any one time as predetermined by the trader. If the initial visible quantity of lots in the "iceberg" is filled, then additional lots will automatically be shown to the market. This type of order entry allows traders to execute large-lot trades without signaling to the market their intention to fill a large quantity of lots. Therefore, traders who want to fill orders for large-lot quantities may use this order entry method to avoid the natural price movements that could potentially occur in reaction when orders, particularly large-lot orders, suddenly are placed in the market. This order entry method assists a trader in trying to get the best possible price for all of the lots the trader desires to fill.

41.    Moncada's lack of use of "iceberg" orders further illustrates that he had no intent to fill the vast majority of the large-lot orders he placed on the attempted manipulation dates.

42.    On the attempted manipulation dates, Moncada entered only four large-lot orders with the "iceberg" function, all of which were on October 27, 2009. By contrast,

Moncada entered 710 large-lot orders showing the entire quantity to the market. However,

Moncada frequently used "iceberg" orders to fill his orders ranging in size from 20 to 100 lots.

43.     Had Moncada intended for his large-lot orders to be filled, he could have used

the "iceberg" function to fill each of those large-lot orders. The "iceberg" function avoids

sudden price movement by the market. Rather than engage in this legitimate trading strategy,

Moncada used Trading Tactics 1, 2 and 3 to create a misleading impression of increasing

liquidity in the market so he could attempt to benefit financially from price movements.

### B. Conclusions of Law

#### 1. Jurisdiction and Venue

44.     This Court has jurisdiction over this action pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that

any person has engaged, is engaging, or is about to engage in any act or practice constituting a

violation of any provision of the Act or any rule, regulation, or order promulgated thereunder,

the Commission may bring an action in the proper district court of the United States against

such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule,

regulation or order thereunder.

45.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2012), because Moncada resided in this jurisdiction at the time of the acts and

practices in violation of the Act and/or the acts and practices in violation of the Act occurred

within this District.

> **2. Violation of Sections 6(c), 6(d), and 9(a)(2) of the Commodity Exchange Act – Attempted Manipulation (Counts One through Eight of the Complaint)**

46.     Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2) (2006), make it illegal for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

47.     On October 6, 12, 14, 19, 26, 27, 29, and 30, 2009, Moncada attempted to manipulate the market price of the December 2009 Wheat Futures Contract through the manipulative scheme of 1) manually placing and immediately canceling numerous large-lot orders without the intent to have the large-lot orders filled, but instead with the intent to create the misleading impression of increasing liquidity in the market; 2) placing these large-lot orders at or near the best bid or offer price in a manner to avoid being filled by the market; and 3) placing small-lot orders on the opposite side of the market from these large-lot orders with the intent of taking advantage of any price movements that might result from the misleading impression of increasing liquidity that his large-lot orders created. Moncada intended to affect the prices of the December 2009 Wheat Futures Contract on the attempted manipulation dates, and engaged in repeated overt acts in furtherance of that intent on those attempted manipulation dates. Accordingly, Moncada violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. § 9, 13b and 13(a)(2) (2006).

48.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Moncada will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act.

## V.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

49.    Based upon and in connection with the foregoing conduct and the Summary Judgment Order, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Moncada is permanently restrained, enjoined and prohibited from directly or indirectly violating Sections 6(c), 6(d), 9(a)(2), and 4c(a)of the Act, 7 U.S.C. §§ 9, 13(b), 13(a)(2), and 6c(a) (2012), and Commission Regulation 1.38, 17 C.F.R. § 1.38 (2014).

50.    Moncada is also restrained, enjoined and prohibited from directly or indirectly, for a period of five (5) years from the date of entry of this Consent Order, from trading any wheat futures products on or subject to the rules of a registered entity, as registered entity is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012), including but not limited to wheat futures contracts, options on wheat futures contracts, or any wheat product regulated by the Commission (either outright positions or spread positions), including but not limited to the #2 Soft Red Winter Wheat Futures products on the Chicago Board of Trade.

51.    Moncada is also restrained, enjoined and prohibited from directly or indirectly, for a period of one (1) year from the date of the entry of this Consent Order:

    a.    Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012));

    b.    Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2014)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47) (2012), and as further defined by Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2014)), and/or foreign currency (as described in Sections 2(c)(2)(B)

15

and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) (2012)

("forex contracts"), for his own personal account or for any account in which he

has a direct or indirect interest;

c.   Having any commodity futures, options on commodity futures, commodity

options, security futures products, forex contracts and/or swaps traded on his

behalf;

d.   Controlling or directing the trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account involving

commodity futures, options on commodity futures, commodity options,

security futures products, forex contracts, and/or swaps;

e.   Soliciting, receiving or accepting any funds from any person for the purpose

of purchasing or selling any commodity futures, options on commodity

futures, commodity options, security futures products, forex contracts and/or

swaps;

f.   Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

g.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2014)), agent or any other officer or employee of any person (as that

term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012)) exempted from

registration or required to be registered with the Commission except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

## VI.    CIVIL MONETARY PENALTY

52.    Moncada shall pay a civil monetary penalty in the amount of One Million Five Hundred Sixty Thousand dollars ($1,560,000).

53.    Moncada shall pay the civil monetary penalty ("CMP Obligation"), plus post-judgment interest, within ten (10) days of the date of the entry of this Consent Order. If the CMP Obligation is not paid in full within ten (10) days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

54.    Moncada shall pay his CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the U.S. Commodity Futures Trading Commission and sent to the address below:

> U.S. Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables – AMZ 340
> E-mail Box:  9-AMC-AMZ-AR-CFTC
>         DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Moncada shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Moncada shall accompany payment of the CMP Obligation with a cover letter that identifies Moncada and the name and docket number of this proceeding. Moncada shall simultaneously transmit copies of the cover letter and the form of payment to the Chief

17

Financial Officer, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155

21st Street, NW, Washington, D.C. 20581.

56. **Partial Satisfaction:** Any acceptance by the Commission of partial payment of

Moncada's CMP Obligation shall not be deemed a waiver of Moncada's obligation to make

further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek

to compel payment of any remaining balance.

## VII.   MISCELLANEOUS PROVISIONS

56. **Cooperation:** Moncada shall cooperate fully and expeditiously with the

Commission, including the Commission's Division of Enforcement, and any other

governmental agency in this action, and in any investigation, civil litigation, or administrative

matter related to the subject matter of this action or any current or future Commission

investigation related thereto.

57. **Notice:** All notices required to be given by any provision in this Consent Order

shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Director, Division of Enforcement
U.S. Commodity Futures Trading Commission
1155 21st Street NW
Washington, D.C. 20581

Notice to Eric Moncada:

Richard Asche
Litman, Asche, & Gioiella, LLP
140 Broadway, 38th Floor
New York, NY 10005

All such notices to the Commission shall reference the name and docket number of this

action.

58.   **Change of Address/Phone:** Until such time as Moncada satisfies in full his CMP Obligation as set forth in this Consent Order, Moncada shall provide written notice to the Commission by certified mail of any change to their telephone numbers and mailing addresses within ten (10) calendar days of the change.

59.   **Successors and Assigns:** This Consent Order shall inure to the benefit of, and is binding on, Moncada's successors, assigns, heirs, beneficiaries, and administrators. Nothing in this Consent Order shall be construed to confer any rights on any non-party to this Consent Order or to inure to the benefit of any non-party to this Consent Order.

60.   **Entire Agreement and Amendments:** This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

61.   **Invalidation:** If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

62.   **Waiver:** The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

63. **Continuing Jurisdiction of this Court:** This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Moncada to modify or for relief from the terms of this Consent Order.

64. **Injunctive and Equitable Relief Provisions:** The injunctive and equitable relief provisions of this Consent Order shall be binding upon Moncada, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Moncada.

65. **Counterparts and Facsimile Execution:** This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

66. Moncada understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Eric Moncada.

**DONE AND ORDERED** in Chambers in New York City, this ___ day of

_October_____, 2014

Hon. Colleen McMahon
United States District Judge

CONSENTED TO AND APPROVED BY:

Eric Moncada, Defendant

Date: 7/31/14

Andrew Ridenour
Jennifer Diamond
Elizabeth Davis
Rick Glaser
U.S. Commodity Futures Trading Commission
1155 21st Street NW
Washington, D.C. 20581
(202) 418-5438 (Ridenour direct)
(202) 418-5937 (fax)

APPROVED AS TO FORM:

Richard M. Asche (RMA7081)
Litman, Asche, and Gioiella, LLP
Attorney for Defendant Eric Moncada
140 Broadway- 38th Floor
New York, NY 10005
(212) 809-4500

Date: 8/4/14

Date: 9-30-14

21